610 S.E.2d 8

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Keith L. WHEATON, a Member of the West Virginia State Bar, Respondent.**

No. 31275.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Nov. 12, 2004.

Rachael L. Fletcher, Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, for the Complainant.

Katherine L. Dooley, The Dooley Law Firm, P.L.L.C., Charleston, for the Respondent.

PER CURIAM:

This lawyer disciplinary proceeding against Keith L. Wheaton (hereinafter referred to as "Mr. Wheaton") was brought to this Court by the Office of Disciplinary Counsel (hereinafter referred to as the "ODC") on behalf of the Lawyer Disciplinary Board (hereinafter referred to as the "Board"). The Board's Hearing Panel Subcommittee

1. For additional recommendations by the Board, see note 30, *infra*.

2. The Board and Mr. Wheaton submitted Proposed Stipulations which were adopted by the Hearing Panel Subcommittee.

determined that Mr. Wheaton committed thirty-one violations of the West Virginia Rules of Professional Conduct. Consequently, the Board recommended that Mr. Wheaton's license to practice law be annulled.[1] Mr. Wheaton does not contest the Board's findings of fact or the finding that he committed thirty-one violations of the Rules of Professional Conduct.[2] However, Mr. Wheaton contends that annulment of his law license is too harsh a remedy. In the alternative, Mr. Wheaton suggested an eighteen-month suspension, supervised practice for a period of three years, and a good faith effort to satisfy the judgment rendered against him by the United States Bankruptcy Court. Based upon the parties' arguments to this Court, the record designated for our consideration, and the pertinent authorities, we conclude that Mr. Wheaton's law license should be annulled.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Wheaton was admitted to the practice of law on May 1, 1995. Initially, he worked at the State Tax Department in Charleston, West Virginia, in the criminal investigation division. Thereafter, he moved to Martinsburg, West Virginia, and opened his own law office in May 1996. The allegations of misconduct occurred subsequent to his move to Martinsburg and are heretofore summarized with the Board's corresponding findings of misconduct.

### A. Count 1—Complaint of Margo Bruce

Ms. Margo Bruce retained Mr. Wheaton in 1999 to represent her in a civil action. She paid an initial fee of $300.00, then a second fee of $150.00. A settlement was reached on or about September 21, 2000, in the amount of $15,000.00. Mr. Wheaton deposited the settlement check into his business account, as he did not have an IOLTA[3] account activated at the time. Mr. Wheaton proceeded to

3. "IOLTA is an acronym for Interest of Lawyer Trust Accounts." *Lawyer Disciplinary Bd. v. Askin*, 203 W.Va. 320, 324 n. 8, 507 S.E.2d 683, 687 n. 8 (1998). Lawyers are required to maintain such an account under Rule 1.15 of the Rules of Professional Conduct. *See infra* note 4.

write a check to Ms. Bruce in the amount of $10,000.00, for her portion of the settlement proceeds. The check failed to clear due to lack of sufficient funds. Mr. Wheaton explained the situation as a banking error and promised prompt payment to Ms. Bruce. When Mr. Wheaton failed to pay Ms. Bruce, she contacted local law enforcement, and a felony worthless check warrant was issued.

Thereafter, Mr. Wheaton obtained a cashier's check for $10,000.00. Mr. Wheaton told both the ODC and the local law enforcement authorities that Ms. Bruce would shortly receive her money and sent copies of the cashier's check to both law enforcement and the ODC as proof of payment. Ms. Bruce never received this check. However, it was later discovered that the check had been cashed. Local law enforcement investigated and learned the check had been redeposited into Mr. Wheaton's own account. During the evidentiary hearing before the Board, Mr. Wheaton admitted that he redeposited the same into his personal account to cover the closing costs of his personal residence.

As a result of the abovementioned conduct, the Board found that Mr. Wheaton violated Rule 1.15 of the Rules of Professional Conduct [4] by failing to set up, maintain, and/or deposit the settlement check into a proper trust account. The Board found a second violation of Rule 1.15 because Mr. Wheaton failed to deliver Ms. Bruce her funds, and additionally, converted the same to his own personal use. As a result of failing to have a written contingency fee agreement and failing to provide an itemized statement, the Board found Mr. Wheaton violated Rule 1.5(c) [5] of the Rules of Professional Conduct. Moreover, the Board found Mr. Wheaton's intentional taking of a client's funds for his own use and his misrepresentations to both his client and to law enforcement officials was a violation of Rule 8.4.[6] Additionally, Mr. Wheaton's misrepresentations made to the ODC during the investigative process violated Rule 8.1.[7]

### B. Count 2—Complaint of Pamela D. Mason

Ms. Pamela D. Mason retained Mr. Wheaton to pursue a discrimination claim in May 1997, and tendered $500.00 to him. After Ms. Mason's many attempts to contact Mr. Wheaton regarding the status of her case, Mr. Wheaton sent a letter dated January 15, 1999, stating he had filed suit and enclosed a copy of the signed complaint. Ms. Mason filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, where she

---

4. The relevant portion of Rule 1.15(a) of the West Virginia Rules of Professional Conduct provides as follows:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

5. The relevant portion of Rule 1.5 of the West Virginia Rules of Professional Conduct provides, in pertinent part:

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

6. The relevant portions of Rule 8.4 of the West Virginia Rules of Professional Conduct provide as follows: "[i]t is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]"

7. Rule 8.1 of the West Virginia Rules of Professional Conduct provides, in pertinent part: "[a]n applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact[.]"

listed as an asset an interest in the claim being pursued on her behalf by Mr. Wheaton. Mr. Wheaton was appointed as special counsel in the bankruptcy claim to pursue the discrimination claim on behalf of the bankruptcy estate. He then filed an affidavit with the bankruptcy court and enclosed a copy of the complaint that he earlier had sent to Ms. Mason. After many attempts to get information from Mr. Wheaton, the bankruptcy trustee contacted the circuit court where Ms. Mason's civil action allegedly had been filed by Mr. Wheaton. The bankruptcy trustee discovered that, in fact, no civil action had ever been filed, and further, that any action would now be time barred as the applicable statute of limitations had run. Mr. Wheaton then failed to appear at several hearings before the bankruptcy court and failed to respond to the bankruptcy trustee's further requests for information.

On November 26, 2001, an adversary proceeding was filed against Mr. Wheaton in bankruptcy court. A partial motion for summary judgment was granted as to liability, and a later hearing on damages was held on September 12, 2003. By order entered October 23, 2003, the bankruptcy court ordered judgment against Mr. Wheaton to be paid to Ms. Mason's bankruptcy estate in the amount of $45,000.00.

Based upon Mr. Wheaton's misconduct related to Ms. Mason, the Board found that Mr. Wheaton violated Rule 1.3 [8] of the Rules of Professional Conduct by failing to pursue a matter for which he was retained and by falsely representing that he had filed a civil action when, in fact, he had not. The Board also found a violation of Rule 1.16 [9] of the Rules of Professional Conduct as a result of Mr. Wheaton's failure to adequately pursue the matter and his failure to withdraw from the case when it was clear that he could not, or chose not, to perform the legal services. Moreover, the Board found that Mr. Wheaton failed to refund the advance payment of the fee which was paid but not earned. Additionally, the Board found that Mr. Wheaton violated Rule 1.4 [10] by failing to return his client's phone calls, failing to provide her with sufficient information to participate in decisions, failing to advise her that he had not filed a civil action on her behalf, failing to advise her that the statute of limitations had run on her claim, and failing to fulfill reasonable client expectations for information consistent with the client's best interests. The Board also found that Mr. Wheaton's dilatory practices and failure to make reasonable efforts to further litigation resulted in a violation of Rule 3.2.[11] Furthermore, the Board found that Mr. Wheaton falsely indicated that a civil action had been filed when, in fact, none had, in violation of Rule 8.4.[12] Lastly, Mr. Wheaton failed to reduce his contingency fee agreement to writing in violation of Rule 1.5(c).[13]

### C. Count 3—Complaint of Nancy Christensen

Ms. Nancy Christensen retained Mr. Wheaton to represent her in a suit against

---

**8.** The relevant portion of Rule 1.3 of the West Virginia Rules of Professional Conduct provides as follows: "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

**9.** Rule 1.16 of the West Virginia Rules of Professional Conduct provides, in pertinent part:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**10.** West Virginia Rule of Professional Conduct 1.4 directs:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**11.** Rule 3.2 of the West Virginia Rules of Professional Conduct states that: "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

**12.** See *supra* note 6 for the relevant text of Rule 8.4.

**13.** For the text of Rule 1.5(c), see *supra* note 5.

the Veteran Affairs Medical Center in June 1998. When Mr. Wheaton determined that the case was not proceeding toward mediation as hoped, Ms. Christensen tendered $150.00 to Mr. Wheaton to cover the costs of filing a civil action. After several attempts to check on the status of her case, Ms. Christensen received a letter from Mr. Wheaton dated July 5, 2000, wherein he indicated he had unilaterally rejected a proposed settlement offer in the amount of $5,000.00. The letter also indicated that mediation was the best way to proceed and that the court had removed the case from its docket. The same letter also questioned whether a federal Torts Claim Act form had been completed and whether the failure to do so would preclude an action in the court system. After receipt of the letter, Ms. Christensen attempted to see Mr. Wheaton to discuss her case. She arrived at Mr. Wheaton's office for a scheduled meeting; however, Mr. Wheaton never appeared. Ms. Christensen returned home and called the courthouse. She then discovered that no civil action had been filed on her behalf against the Veteran Affairs Medical Center.

In light of the foregoing misconduct, the Board found that Mr. Wheaton violated Rule 1.3 [14] of the Rules of Professional Conduct by failing to pursue a matter for which he was retained; by falsely representing that he had filed a civil action when, in fact, he had not; and by failing to protect his client's claim against the statute of limitations. Mr. Wheaton's failure to return Ms. Christensen's phone calls, failure to provide her with information about her case, and failure to advise her regarding the status of the filing of her case resulted in a violation of Rule 1.4 [15] of the Rules of Professional Conduct. Moreover, Mr. Wheaton's unilateral rejection of a

proposed settlement offer without advising Ms. Christensen of the same violated Rule 1.2(a) [16] of the Rules of Professional Conduct. The Board also found that Mr. Wheaton violated Rule 3.2 [17] of the Rules of Professional Conduct by his dilatory practices and failure to make reasonable efforts consistent with his discussions with Mr. Christensen. Furthermore, the Board found that Mr. Wheaton violated Rule 1.16 [18] of the Rules of Professional Conduct by failing to pursue the matter on behalf of Ms. Christensen, by failing to withdraw from representation when he chose not to perform legal services, and by failing to refund the advanced payment of the fee that was not earned. Finally, the Board found that Mr. Wheaton violated Rule 8.4 [19] of the Rules of Professional Conduct when he falsely represented to Ms. Christensen that he had, in fact, filed a civil action on her behalf.

### D. Count 4—Complaints of Keith and Marianne Short, Dr. Lurito, and Dr. Gerwin

Keith and Marianne Short retained Mr. Wheaton to represent them in a personal injury action which was scheduled for trial in one month. The Shorts gave Mr. Wheaton $7,500.00 to cover the advance payments needed for the expert witnesses who would testify at trial. A jury verdict was awarded in the amount of $34,726.30, which Mr. Wheaton deposited into his IOLTA account. Mr. Wheaton then wrote a check to the Shorts for their portion of the award, and wrote himself a check for his fee. The check written to the Shorts was returned for insufficient funds. A second felony worthless check warrant was issued against Mr. Wheaton as a result.

During the course of representing the Shorts, Mr. Wheaton hired Dr. Lurito to

---

**14.** See *supra* note 8 for the relevant text of Rule 1.3.

**15.** For the relevant text of Rule 1.4, see note 10, *supra.*

**16.** Rule 1.2(a) of the West Virginia Rules of Professional Conduct provides, in pertinent part:

 (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall

abide by a client's decision whether to accept an offer of settlement of a matter.

**17.** See *supra* note 11 for the relevant text of Rule 3.2.

**18.** For the relevant text of Rule 1.16, see *supra* note 9.

**19.** The relevant portion of Rule 8.4 of the West Virginia Rules of Professional Conduct provides as follows: "[i]t is professional misconduct for a lawyer to:... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

testify and produce a report regarding future and past economic damages. Dr. Lurito's fee was $2,500.00. The checks written by Mr. Wheaton to Dr. Lurito were returned for insufficient funds. Dr. Lurito eventually filed an ethics complaint with the ODC against Mr. Wheaton. Dr. Gerwin was also hired to be an expert in the case, and his fees totaled $2,300.00. Although Dr. Gerwin received a $50.00 check which cleared, the remaining $2,250.00 in checks were returned for insufficient funds. Dr. Gerwin eventually also filed an ethics complaint with the ODC against Mr. Wheaton.

The Board investigated the complaints filed by Drs. Lurito and Gerwin and found violations of Rule 1.15(b) [20] by Mr. Wheaton's failure to deliver client funds, failure to pay for expert services, and misappropriation of advanced funds and settlement proceeds to his own use. It was further found that Mr. Wheaton intentionally converted his clients' funds to his own use in violation of Rule 8.4 [21] of the Rules of Professional Conduct. The Board further found that Mr. Wheaton violated Rule 8.1 [22] of the Rules of Professional conduct when he made material misrepresentations to the ODC in connection with the investigation of the ethics complaints, and falsely represented to the ODC that his clients and the retained experts had either been paid in full or would be paid by a certain date.

### E. Count 5—Complaint of Edward K. Pruden, Sr.

Mr. Edward K. Pruden, Sr., retained Mr. Wheaton to represent him in a wrongful termination case and tendered $150.00. When Mr. Wheaton informed Mr. Pruden that negotiations were not proceeding as planned, Mr. Pruden tendered an additional $150.00 for filing fees. After several failed attempts to contact Mr. Wheaton regarding the status of his case, Mr. Pruden received a letter from Mr. Wheaton dated July 5, 2000, wherein he indicated he had unilaterally rejected a proposed settlement offer in the amount of $5,000.00. The letter also indicated that mediation was the best way to proceed and that the Court had removed the case from its docket. At some later point, Mr. Pruden read an article in the newspaper about Mr. Wheaton's problematic representation of Ms. Margo Bruce. Mr. Pruden went to the courthouse and discovered that no civil action had ever been filed on his behalf.

Mr. Pruden filed a complaint with the ODC, and, following an investigation, the Board found that Mr. Wheaton violated Rule 1.3 [23] of the Rules of Professional Conduct by failing to pursue a matter for which he was retained and by falsely representing that he had filed a civil action when, in fact, he had not. The Board also found that Mr. Wheaton violated Rule 1.4 [24] by failing to return his client's phone calls, failing to provide Mr. Pruden with sufficient information to participate in decisions, failing to advise him that he had not filed a civil action on his behalf, and failing to fulfill reasonable client expectations for information consistent with the client's best interests. Moreover, Mr. Wheaton's unilateral rejection of a proposed settlement offer, without advising Mr. Pruden of the same, violated Rule 1.2(a) [25] of the Rules of Professional Conduct. The Board additionally found a violation of Rule 1.16 [26] of the

**20.** Rule 1.15(b) of the West Virginia Rules of Professional Conduct provides, in pertinent part:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

**21.** For the relevant text of Rule 8.4, see *supra* note 6.

**22.** See *supra* note 7 for the relevant text of Rule 8.1.

**23.** For the relevant text of Rule 1.3, see *supra* note 8.

**24.** The relevant portion of Rule 1.4 of the West Virginia Rules of Professional Conduct provides as follows:
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**25.** See *supra* note 16 for the relevant text of Rule 1.2(a).

**26.** For the relevant text of Rule 1.16, see *supra* note 9.

Rules of Professional Conduct by Mr. Wheaton's failure to adequately pursue the matter and by his failure to withdraw when it was clear that he could not, or chose not, to perform the legal services for which he had been retained. Finally, the Board found Mr. Wheaton violated Rule 8.4[27] of the Rules of Professional Conduct because he misrepresented to his client that a civil action had been filed and, furthermore, that the court had removed the case from its docket.

### F. Count 6—Complaint of Elizabeth Crawford

In July 1999, Ms. Elizabeth Crawford and approximately fifty other people met with Mr. Wheaton to discuss a class action lawsuit regarding possible civil rights infringements. Ms. Crawford tendered a check in the amount of $300.00 to be included in the class and for the filing fees. After several failed attempts to contact Mr. Wheaton regarding the status of the case, Ms. Crawford eventually discovered that no class action suit had been filed.

As a result of this misconduct, the Board found Mr. Wheaton violated Rule 1.3[28] of the Rules of Professional Conduct because he failed to pursue the matter on behalf of Ms. Crawford after she retained his services. The Board also found violations of Rule 1.16[29] of the West Virginia Rules of Professional Conduct because Mr. Wheaton failed to pursue the matter, failed to withdraw from representation when it was clear he could not, or chose not, to perform the legal services, and failed to refund the advanced payment of the fee that had not been earned.

### G. Disposition of Disciplinary Proceeding

As a result of these transgressions, the investigative panel of the Lawyer Disciplinary Board issued a Statement of Charges against Mr. Wheaton on April 16, 2003. Upon joint motion by Disciplinary Counsel and Mr. Wheaton, certain factual allegations in the Statement of Charges were stipulated, and the Hearing Panel Subcommittee entered an order accepting the stipulations. The Board heard evidence on September 8 and 9, 2003, including evidence of both mitigating and aggravating factors. Based upon such evidence, the Board found that Mr. Wheaton's remorse, as expressed during the hearing, together with his inexperience in the practice of law, were insufficient mitigating factors to outweigh the five-year span of misconduct, which included failure to properly account for clients' funds and failure to deal honestly with clients, the courts, and other counsel. Therefore, the Board found that Mr. Wheaton committed thirty-one violations of the Rules of Professional Conduct, and recommended that Mr. Wheaton's law license be annulled.[30]

### II.

### STANDARD OF REVIEW

■ Although the Board makes recommendations to this Court regarding sanctions to be imposed upon an attorney for ethical violations, we have held that

" '[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syllabus point 3,

---

**27.** See *supra* note 19 for the relevant text of Rule 8.4.

**28.** For the relevant text of Rule 1.3, see note 8, *supra*.

**29.** See *supra* note 9 for the relevant text of Rule 1.16.

**30.** The Board also recommended that should Mr. Wheaton seek reinstatement after the prescribed five-year period under Rule 3.33 of the Rules of Lawyer Disciplinary Procedure, he should be required to: (1) reimburse clients who were injured by his misconduct and who he never repaid

as follows: Ms. Christensen in the amount of $450.00, Mr. Pruden in the amount of $300.00, and Ms. Mason in the amount of $500.00; (2) fully satisfy the judgment assessed against him by the federal bankruptcy court due to his misconduct in the underlying case of his client, Ms. Mason; (3) demonstrate that he has an understanding of the Rules of Professional Conduct and that he undertake an additional eighteen hours of ethics and office management continuing legal education; (4) submit to supervised practice for a period of at least two years; and (5) reimburse the Board for the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Committee on Legal Ethics of the West Virginia State Bar v. Blair, 174 W.Va. 494, 327 S.E.2d 671 (1984)."

Syl. pt. 1, Lawyer Disciplinary Bd. v. Scott, 213 W.Va. 209, 579 S.E.2d 550 (2003).

Our standard of review of proceedings before the Board was set out in syllabus point 3 of Committee on Legal Ethics v. McCorkle, 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

> A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 1, Lawyer Disciplinary Bd. v. Sims, 212 W.Va. 463, 574 S.E.2d 795 (2002). Accord Syl. pt. 3, Lawyer Disciplinary Bd. v. Cunningham, 195 W.Va. 27, 464 S.E.2d 181 (1995). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

■ The Board found that Mr. Wheaton had violated thirty-one provisions of the Rules of Professional Conduct. The ODC carries the burden of proving allegations of attorney misconduct by clear and convincing evidence. See Syl. pt. 1, Lawyer Disciplinary Bd. v. McGraw, 194 W.Va. 788, 461 S.E.2d 850 (1995) (relying on Rule 3.7 of the Rules of Lawyer Disciplinary Procedure). Mr. Wheaton does not contest the facts or the ethical violations as found by the Board. Therefore, there is no need for this Court to disturb the Board's findings that Mr. Wheaton violated the provisions of the Rules of Professional Conduct on thirty-one occasions.

Neither does Mr. Wheaton oppose the finding of ethical violations as found by the Board. However, he does challenge the Board's recommendation that the appropriate sanction be annulment of his law license.

Instead, Mr. Wheaton argues that mitigating factors exist to lessen the severity of punishment. On the other hand, the ODC contends that no mitigating factors exist, and even if this Court finds the presence of mitigating factors, aggravating factors exist that support the sanction of annulment of Mr. Wheaton's law license.

### A. Mitigating Factors

■ "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, Lawyer Disciplinary Bd. v. Scott, 213 W.Va. 209, 579 S.E.2d 550. The Scott opinion at Syllabus point 3 further explained that

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Mr. Wheaton has identified six mitigating factors as being applicable to his case: (1) absence of a prior disciplinary record; (2) inexperience in the practice of law; (3) interim rehabilitation; (4) full and free disclosure to the disciplinary board or cooperative attitude toward proceedings; (5) imposition of other penalties or sanctions; and (6) remorse. We discuss each of these factors in turn.

■ **1. Absence of a prior disciplinary record.** First, Mr. Wheaton argues that he had no prior record or complaints filed with the ODC. While lack of a prior record or complaints may be a mitigating factor, it is not a persuasive one in this case. Mr. Whea-

ton's pattern of misconduct, which is the subject of this disciplinary proceeding, spanned from 1997 to 2002. He did not open his own practice until May 1996. The conduct giving rise to the complaints began soon after Mr. Wheaton opened his own practice and continued through 2002, which was the end of the inquiry in this disciplinary proceeding. The long span of misconduct vitiates any lack of prior record or complaints as a significant mitigating factor.

**2. Inexperience in the practice of law.** Second, Mr. Wheaton argues that there is no dispute that he was inexperienced in the practice of law. Upon graduation from law school, he worked for approximately one year at the State Tax Department, and then proceeded to open his own practice where his inexperience led him to take on too many cases. While this Court agrees that Mr. Wheaton was inexperienced in the practice of law, it is not persuaded that his inexperience justifies his behavior. Mr. Wheaton made it a practice to misrepresent facts to his clients, to a bankruptcy trustee, to the bankruptcy court, and to counsel for the ODC. While his inexperience in the practice of law is a mitigating factor, it does not justify his dishonest behavior, and further, does not justify its duration for the substantial time period in question.

**3. Interim rehabilitation.** Third, Mr. Wheaton argues that interim rehabilitation is a mitigating factor because he re-paid some monies which he owed, refunded attorney's fees where requested, ceased writing checks, and engaged an accountant. Additionally, he now posts case deadlines in a conspicuous place in his office and has undertaken efforts to promptly return phone calls. As discussed in *Scott,* this Court previously held that "[t]o establish interim rehabilitation as a mitigating factor, at a minimum a lawyer must show that since the treatment was started, he or she has not engaged in improper conduct." *Scott,* 213 W.Va. at 215, 579 S.E.2d at 556. While the discussion in *Scott* revolved around treatment for a mental illness, the same reasoning can be applied in Mr. Wheaton's case. Even after Mr. Wheaton engaged the services of an accountant, he still misappropriated funds and converted clients' funds to his own use. Mr. Wheaton began using an accountant in 2000, but continued misappropriating clients' funds in 2001 and 2002. Further, this Court has held that if restitution was made after commencement of disciplinary proceedings, or under pressure of threat of disciplinary proceedings, courts can refuse to consider it as a mitigating factor. *Lawyer Disciplinary Bd. v. Kupec,* 202 W.Va. 556, 505 S.E.2d 619 (1998). Mr. Wheaton did make some payments to some clients, but only under pressure of pending disciplinary proceedings. Mr. Wheaton has yet to repay many clients who advanced fees for services which were never performed, and has yet to satisfy a judgment assessed against him in an adversary proceeding in the bankruptcy court as a result of his misrepresentations to a client and to that court. Therefore, Mr. Wheaton is unable to establish interim rehabilitation as a mitigating factor.

**4. Full and free disclosure to the disciplinary board or cooperative attitude toward proceedings.** Fourth, Mr. Wheaton argues that full and free disclosure to the disciplinary board or a cooperative attitude toward proceedings is a mitigating factor. Mr. Wheaton admits problems with truthfulness, but suggests that he was cooperative with the ODC. While the Board and the ODC acknowledged that Mr. Wheaton was forthright and honest during the hearings held before the Board, it is undisputed that Mr. Wheaton was less than forthcoming with counsel from the ODC during the investigation of the ethics complaints and during his sworn statement. In fact, the evidentiary hearing before the Board was the first time that Mr. Wheaton admitted to converting the settlement funds which belonged to Ms. Bruce so that he could afford to purchase and close on his own personal residence. Prior to that time, he went out of his way to deceive the ODC, including sending copies of a cashier's check as proof of payment to a client and then redepositing the same into his own personal account. Mr. Wheaton's sworn statement also misrepresents that he was sending payment to various other clients and to retained experts; however, he admitted for the first time at the evidentiary hearing that he had testified falsely about these payments during his sworn statement. While Mr. Wheaton did eventually testify truthfully

and participated freely and cooperatively during the evidentiary hearings before the Board, his prior dishonesty delayed and obstructed the investigative process. Therefore, Mr. Wheaton has not established full and free disclosure to the disciplinary board or a cooperative attitude toward proceedings as a mitigating factor.

██ **5. Imposition of other penalties or sanctions.** Fifth, Mr. Wheaton argues that the imposition of other penalties or sanctions is a mitigating factor. In *Scott,* this Court held that a prosecutor's voluntary removal from office was a mitigating factor. While Mr. Wheaton has been winding down his law practice in anticipation of a suspension of his law license, he has not removed himself entirely from the practice of law. The fact that Mr. Wheaton is winding down his practice is not a mitigating factor because he continues to practice law.

██ Additionally, while two felony arrest warrants were issued against Mr. Wheaton, and a judgment was awarded against him by the bankruptcy court, these factors are not mitigating because both felony warrants were dismissed and because Mr. Wheaton has done nothing to satisfy the bankruptcy judgment against him. Therefore, Mr. Wheaton failed to illustrate the imposition of other penalties or sanctions as a mitigating factor.

██ **6. Remorse.** Finally, Mr. Wheaton states that he is remorseful and did not realize the impact of his actions on his clients until he heard them testify at the disciplinary hearings. He apologized to his clients and expressed regret and remorse for his actions and inactions, and it was specifically found by the Board that Mr. Wheaton expressed genuine remorse for his actions. While Mr. Wheaton's remorse is a mitigating factor, the impact of Mr. Wheaton's actions on his clients far outweighs any mitigation. Three clients lost their causes of action forever because the statute of limitations ran on their claims. Furthermore, Mr. Wheaton did not carry malpractice insurance. His clients' claims are forever barred, and a legal malpractice suit against Mr. Wheaton would be likely fruitless in the absence of insurance. Significantly, this Court takes into account the testimony of his former clients before the

Board. Mr. Wheaton is African–American, and many of his former clients are also members of a minority. These clients testified that they sought Mr. Wheaton's legal services because of his minority status and that they feel doubly betrayed by his actions. Mr. Wheaton expressed remorse; however, his remorse is outweighed by the profound impact, both emotionally and financially, that his actions had on his clients, and upon the public's perception of lawyers and the legal system. *See, e.g., Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998) (annulling law license based, in part, on need to punish attorney in such a way as to provide a deterrent to other Bar members and to restore and protect the public confidence in the ethical standards of the legal profession).

### B. Aggravating Factors

██ In addition to the lack of substantial mitigating factors in Mr. Wheaton's case, several aggravating factors also exist. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Scott,* 213 W.Va. 209, 579 S.E.2d 550. Mr. Wheaton's pattern of misconduct spanned a time frame from 1997 to 2002. His behavior showed a pattern of misappropriating funds and unlawfully converting client funds to his own personal use. He routinely accepted legal fees for services which he never performed. He also exhibited a pattern of failing to communicate with his clients, making material misrepresentations to his clients and to the court, and failing to diligently pursue cases on behalf of clients. Moreover, Mr. Wheaton showed a pattern of making false statements to disciplinary counsel during investigations of ethical complaints. Therefore, the aggravating factors outweigh the possible presence of any mitigating factors.

### C. Appropriate Sanction

██ Mr. Wheaton relies on the *Scott* opinion in recommending that his license be suspended for eighteen months as opposed to annulment. Mr. Wheaton's reliance on *Scott* is understandable in that Mr. Scott's case was ultimately decided in a more lenient fashion than the annulment recommended by

the Board in the case *subjudice*. Although the Board recommended annulment in Mr. Scott's case, this Court imposed a three-year suspension. Mr. Wheaton's reliance on *Scott* for lenience is misguided, however, because Mr. Scott's behavior paled in comparison to the misconduct committed by Mr. Wheaton. Several mitigating factors were present in Mr. Scott's case, the most significant being the underlying illness of bipolar disorder. In addition to substantial mitigating factors, Mr. Scott's case lacked the aggravating factors present in Mr. Wheaton's case. Mr. Scott did not convert or misappropriate any client funds. While Mr. Scott's behavior had a disparate financial impact on his clients in that he failed to attend court hearings, and his clients' cases were dismissed because of his inaction, he never took money that belonged to his clients and converted it to his own personal use. Mr. Wheaton, on the other hand, took retainer fees for which he then performed no services. He also received monies on behalf of his clients due to both settlements and jury verdicts, and he misappropriated those funds for his own personal use.

 "This Court, like most Courts, proceeds from the general rule, that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 499, 513 S.E.2d 722, 726 (1998) (citing *Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 561, 505 S.E.2d 619, 631 (1998)). Our discussion in the *Kupec* case classifies misappropriation offenses according to the level of intent and the level of the injury. The American Bar Association standards are consistent with this general rule in finding disbarment appropriate in cases of knowing conversion with injury or potential injury to the owner of entrusted funds. *See generally* ABA/BNA Lawyers' Manual on Professional Conduct § 01:801 (1992). Mr. Wheaton may argue that restitution may be considered as a mitigating factor in the imposition of sanctions. *Kupec*, 202 W.Va. at 570, 505 S.E.2d at 633 (internal citations omitted). However, for restitution to be accepted as a mitigating factor, it must be made promptly. *Id.* (internal citations omitted). Not only did Mr.

Wheaton knowingly convert clients' funds, he also failed to make full restitution in a timely manner. Any funds that were eventually refunded were paid only after the threat or imposition of disciplinary proceedings. Significantly, Mr. Wheaton still owes refunds which were retainer fees for services he never performed, and he also owes a judgment assessed against him by the bankruptcy court.

 In fashioning the sanction, this Court is mindful of its prior holding that

" '[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

Syl. pt. 7, *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). *Accord* Syl. pt. 5, *Lawyer Disciplinary Bd. v. Sims*, 212 W.Va. 463, 574 S.E.2d 795 (2002) (per curiam). "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Committee on Legal Ethics v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). *Accord Sims*, 212 W.Va. at 469, 574 S.E.2d at 801 (Davis, J., dissenting). Based on the severity of Mr. Wheaton's misconduct and the duration of time involved, as well as the financial and emotional impact his actions had on his clients, the only adequate discipline that would serve the public policy interests is annulment of Mr. Wheaton's law license.

## IV.

## CONCLUSION

For the foregoing reasons, we adopt the recommendations as set forth by the Board. Therefore, we annul Mr. Wheaton's license to practice law in West Virginia.

License to practice law in West Virginia annulled.

Justice STARCHER files a dissenting opinion joined by Justice McGRAW.

STARCHER, J., dissenting.

Mr. Wheaton is a young African American attorney who was urged by my friend, the distinguished former Justice of this Court, Franklin Cleckley, to move to the Eastern Panhandle of West Virginia and establish a solo practice there—to help meet the underserved needs of that area's large African American community. This was an important mission, and a challenging one.

Mr. Wheaton, inexperienced and on his own in a new area, got in way over his head, and made some serious errors of judgment. The majority details Mr. Wheaton's errors in several cases; but it does not discuss the many legal matters that Mr. Wheaton did handle properly; nor does it take into serious consideration how his work did bring an important degree of racial diversity to the legal community in the Eastern Panhandle.

Mr. Wheaton's attorney before this Court, Ms. Katherine Dooley, ably argued that this Court should weigh in the balance the importance of encouraging diversity in the practice of law. I thoroughly concur in this argument.

I agree that Mr. Wheaton's conduct has been such that he should, at this time, be suspended from practicing law for some period of time. I part company from the majority on the degree of sanction that he should receive, and the burden that Mr. Wheaton should have in seeking reinstatement.

Generally speaking, a "full annulment" sanction places a different burden on the person seeking reinstatement than does a "suspension" sanction. See generally *Lawyer Disciplinary Bd. v. Moore*, 214 W.Va. 780, 591 S.E.2d 338 (2003).

Mr. Wheaton is a young man who made some grievous errors. Because I fully support the effort that former Justice Cleckley began when he urged Mr. Wheaton to begin a solo practice in the Eastern Panhandle, I would like to see Mr. Wheaton return to the bar—if and only if he demonstrates his fitness to do so. To make such a demonstration much more realistically feasible, while still fully protecting the public interest, I would impose a three-year suspension with strict reinstatement conditions, including full restitution.

Accordingly, I dissent.

I am authorized to state that Justice McGRAW joins in this dissent.