655 S.E.2d 787

**LAWYER DISCIPLINARY BOARD, Petitioner**

v.

**Candace K. CALHOUN, an Inactive Member of the West Virginia State Bar, Respondent.**

No. 33067.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 24, 2007.

Decided Nov. 9, 2007.

Lawrence J. Lewis, Esq., Chief Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, for Petitioner.

Candace K. Calhoun, Frostburg, MD, pro se.

PER CURIAM:

This is an attorney disciplinary proceeding that was commenced by the West Virginia Office of Disciplinary Counsel pursuant to the reciprocal discipline provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure after a final order and opinion was entered on March 9, 2006, by the Court of Appeals of Maryland (hereinafter "the Maryland Court") which indefinitely suspended Candace K. Calhoun from the practice of law in Maryland. *See Attorney Grievance Comm'n of Maryland v. Calhoun,* 391 Md. 532, 894 A.2d 518 (2006). On April 11, 2007, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board recommended that the same discipline imposed by the Maryland Court be imposed by this

Court and that Ms. Calhoun's license to practice law in the State of West Virginia be indefinitely suspended. By order dated May 22, 2007, this Court adopted the recommended disposition of the Hearing Panel Subcommittee and ordered that the license to practice law in the State of West Virginia of Candace K. Calhoun be indefinitely suspended. We further ordered that Ms. Calhoun be permitted to file a petition for reinstatement with this Court once she has been reinstated by the Maryland Court.

On June 1, 2007, Ms. Calhoun filed a motion in writing seeking to vacate the May 22, 2007, order previously entered by this Court and requested a briefing schedule. By order entered June 27, 2007, this Court denied the motion to vacate but granted the request for a briefing schedule and argument. Subsequently, Ms. Calhoun filed a brief contending that reciprocal discipline is not warranted in her case because all the exceptions for imposing the same discipline as the foreign jurisdiction which are set forth in subsection (e) of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure clearly exist.[1]

This Court has considered the parties' arguments, the record presented for review, and the pertinent authorities. For the reasons set forth below, we affirm our prior order. Accordingly, the license to practice law in the State of West Virginia of Candace K. Calhoun is indefinitely suspended. Ms. Calhoun may file a petition for reinstatement with this Court once she had been reinstated by the Maryland Court.

## I.

### FACTS

The respondent, Candace Calhoun, is an inactive member of the West Virginia State

---

1. Rule 3.20(e) of the West Virginia Rules of Lawyer Disciplinary Procedure provides:

At the conclusion of proceedings brought under this section, the Hearing Panel Subcommittee shall refer the matter to the Supreme Court of Appeals with the recommendation that the same discipline be imposed as was imposed by the foreign jurisdiction unless it is determined by the Hearing Panel Subcommittee that (1) the procedure followed in the foreign jurisdiction did not comport with the requirements of due pro-

cess of law; (2) the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Supreme Court of Appeals cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; (3) the imposition by the Supreme Court of Appeals of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals.

Bar who was admitted on June 8, 1994. She is also a member of the Maryland and Pennsylvania State Bars. On March 9, 2006, Ms. Calhoun was indefinitely suspended from the practice of law in Maryland. Ms. Calhoun was found guilty of misconduct involving the following Maryland Rules of Professional Conduct: Rule 1.1 (competency); Rule 1.3 (diligence); Rule 1.4 (communications); Rule 1.5 (fees); Rule 1.15 (safekeeping property); Rule 8.4(a) (professional misconduct); Rule 8.4(c) (deceit and misrepresentation); and Rule 8.4(d) (conduct prejudicial to the administration of justice).[2] In addition, it was determined that Ms. Calhoun violated Maryland Rule 16.609 which states:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

Ms. Calhoun was also suspended from practice in Pennsylvania in a reciprocal proceeding by order entered on September 7, 2006.

The Maryland charges against Ms. Calhoun arose out of her representation of a client, Paul Schell, in a sexual harassment action against his former employer. In May 1999, Ms. Calhoun and Mr. Schell executed an agreement whereby Mr. Schell paid Ms. Calhoun an advanced retainer of $5,000.00 which was to be earned at a rate of $150.00 per hour. The agreement provided that the final fee, if the matter was "successfully litigated,"[3] would be the total hourly fee plus twenty percent or forty percent of any monetary recovery whichever was greater. If the matter was not "successfully litigated," the final fee would be the total hourly fee. The agreement further provided that Ms. Calhoun would send Mr. Schell monthly statements after the initial $5,000.00 retainer was depleted.

Ms. Calhoun represented Mr. Schell from 1999 through 2002. She filed a discrimina-

tion charge with the Equal Employment Opportunity Commission on Mr. Schell's behalf in April 2000. In August 2000, she filed a complaint in federal court in Maryland. In June 2001, Ms. Calhoun informed Mr. Schell that he still had funds left in his retainer, but that an additional $5,000.00 was needed to cover the costs of depositions. Mr. Schell paid the $5,000.00. However, the only deposition taken was that of Mr. Schell by opposing counsel. Ms. Calhoun never took any depositions.

In November 2001, Ms. Calhoun recommended that Mr. Schell accept a settlement of $8,000.00. She never advised him though that her attorney fees had accrued in excess of that amount. Mr. Schell agreed to the settlement offer but the Maryland Court found that he did so without full knowledge about how Ms. Calhoun was going to apply the $8,000.00. The Maryland Court further found that Mr. Schell was unaware that he was going to owe Ms. Calhoun additional monies beyond the costs of litigation that had been expended.

In February 2002, the settlement check was issued and settlement papers were signed. Upon receipt, Ms. Calhoun failed to deposit the settlement funds into a proper attorney trust escrow account. Instead, she deposited the entire $8,000.00 into her personal checking account and co-mingled the money with her personal funds. She failed to properly account for the funds she received and also failed to advise Mr. Schell in a timely manner that she had disbursed the money to herself. A year later, in March 2003, after several requests from Mr. Schell, Ms. Calhoun finally informed him of the disposition of the funds. She then sent him a statement for an additional $9,500.00 for her services and costs.

The Maryland Court found that Ms. Calhoun failed to provide Mr. Schell with monthly statements; failed to keep him informed about the status of the litigation; and attempted to collect funds from Mr. Schell for which he was not responsible. The Maryland Court further found that the fees

---

**2.** The Maryland Rules of Professional Conduct are substantially the same as West Virginia's corresponding rules.

**3.** The phrase "successfully litigated" was not defined in the agreement.

charged to Mr. Schell were excessive and unreasonable. The Maryland Court also determined that during her representation of Mr. Schell, Ms. Calhoun failed to interview or depose any potential witnesses; failed to conduct an investigation; failed to provide him with competent representation; failed to act diligently; failed to explain matters to Mr. Schell to the extent reasonably necessary so that he could make informed decisions; and failed to properly safekeep property. Finally, the Maryland Court concluded that Ms. Calhoun misled Mr. Schell and engaged in conduct that was prejudicial to the administration of justice.

The West Virginia Office of Disciplinary Counsel filed its Notice of Reciprocal Disciplinary Action pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure on April 3, 2006. Ms. Calhoun responded on April 28, 2006, and filed a supplemental response on July 3, 2006. Thereafter, the matter was scheduled for hearing on September 14, 2006, before the Hearing Panel Subcommittee. However, Ms. Calhoun did not appear at the hearing. Subsequently, the Hearing Panel Subcommittee filed its report with this Court. The Hearing Panel Subcommittee found that Ms. Calhoun's arguments were without merit and that none of the four exceptions to Rule 3.20(e) for imposing the same discipline as imposed by Maryland had been established. Consequently, the Hearing Panel Subcommittee recommended that this Court impose the same discipline as imposed in Maryland, i.e., indefinite suspension of Ms. Calhoun's license.

On May 22, 2007, this Court entered an order adopting the recommendation of the Hearing Panel Subcommittee and indefinitely suspended Ms. Calhoun's license. On June 1, 2007, Ms. Calhoun filed a motion to vacate that ruling and asked for a briefing schedule. On June 27, 2007, this Court refused Ms. Calhoun's motion to vacate but did grant her request to file a brief. Thereafter, this case was submitted to this Court.

## II.

### STANDARD OF REVIEW

In Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court held that,

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

While the Lawyer Disciplinary Board makes recommendations to this Court regarding sanctions to be imposed upon an attorney for ethical violations, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984).

## III.

### DISCUSSION

As set forth above, reciprocal disciplinary proceedings are governed by Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure. Rule 3.20(c) provides:

Upon receiving notice that a lawyer who is a member, active or inactive, has been publicly disciplined or has voluntarily surrendered his or her license to practice law in another jurisdiction, whether state or federal, Disciplinary Counsel shall, following an investigation pursuant to these rules, refer the matter to a Hearing Panel Subcommittee for appropriate action.

In addition, Rule 3.20(a) states, in pertinent part:

A final adjudication in another jurisdiction, whether state or federal, of miscon-

duct constituting grounds for discipline of a lawyer or a voluntary surrender of a license to practice in connection with a disciplinary proceeding shall, for the purposes of proceedings pursuant to these rules conclusively establish such conduct. Accordingly, this Court held in Syllabus Point 1 of *Lawyer Disciplinary Board v. Post*, 219 W.Va. 82, 631 S.E.2d 921 (2006) that,

> Pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, a final adjudication of professional misconduct in another jurisdiction conclusively establishes the fact of such misconduct for purposes of reciprocal disciplinary proceedings in this state.

In Syllabus Point 4 of *Post* this Court explained that, "The provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure require the imposition of the identical sanction imposed by the foreign jurisdiction unless one of the four grounds provided for challenging the discipline imposed by a foreign jurisdiction is both asserted and established."

> Under the provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, an attorney's right to challenge the disciplinary action of a foreign jurisdiction is limited to the following four grounds: (1) the procedure followed in the other jurisdiction violated due process; (2) there was a total infirmity of proof of misconduct; (3) imposition of the same discipline would result in a grave injustice; or (4) the misconduct warrants a substantially different type of discipline.

Syllabus Point 3, *Post.* In the present proceeding, Ms. Calhoun argues that all of the grounds set forth in Rule 3.20(e) for not imposing the same discipline as the foreign jurisdiction clearly exist, and therefore, this Court should refuse to impose the same discipline as the Maryland Court.

■ Ms. Calhoun first argues that her due process rights were violated in the Maryland

proceedings because of opposing counsel's *ex parte* communication with the Peer Review Panel. Ms. Calhoun specifically contends that before the disciplinary petition was filed against her in Maryland, counsel for the Maryland State Bar communicated with a Peer Review Panel member by a letter which indicated that she had failed to agree to a conditional diversion agreement.[4] Ms. Calhoun raised this issue during her grievance proceeding in Maryland, and the Maryland Court ruled that there had been no violation of her due process rights. The Court explained that Maryland's applicable procedural rule provides that " '[i]t is not a defense or ground for objection to a petition that procedural defects may have occurred during disciplinary or remedial proceedings prior to the filing of the petition.' " 391 Md. at 554, 894 A.2d at 531 (*quoting* Maryland Rule 16–794(b)). The Maryland Court further noted that Maryland Rule 16–743(d) allows *ex parte* communication between the parties and the Peer Review Panel concerning subject matter "*other*" than the substance of the Statement of Charges." 391 Md. at 556, 894 A.2d at 532 (emphasis in original). The Maryland Court determined that an *ex parte* communication concerning whether or not Ms. Calhoun agreed to a conditional diversion agreement did not concern the substance of the Statement of Charges. *Id.*

Given the decision of the Maryland Court on this issue, we find no merit to Ms. Calhoun's argument that her due process rights were violated. We note that it is undisputed that Ms. Calhoun was given notice and an opportunity to defend at hearings in Maryland in July 2005 and February 2006. Thus, Rule 3.20(e)(1) provides no basis for not imposing reciprocal discipline.

■ Ms. Calhoun next contends that the Maryland Court failed to make a finding of material fact. In particular, Ms. Calhoun claims that the Maryland Court failed to determine whether she did or did not provide monthly statements to Mr. Schell. Ms. Cal-

---

**4.** In Maryland, an attorney may avoid disciplinary sanctions by voluntarily entering into an agreement with bar counsel in which he or she acknowledges that he or she has engaged in conduct constituting professional misconduct and agrees to appropriate remedial conditions. The agreement must be approved by the Attorney Grievance Commission. *Calhoun*, 391 Md. at 554, n. 16, 894 A.2d at 531, n. 16.

houn says that such a finding was essential as the disciplinary proceeding in Maryland arose out of Mr. Schell's allegation that she failed to advise him of the fees and costs he owed while she represented him. Mr. Schell asserted that he received no fee statements until Ms. Calhoun submitted her final bill. Ms. Calhoun claims that she sent Mr. Schell monthly statements. Ms. Calhoun says that the Maryland Court improperly imposed discipline without making a determination with regard to whether she sent monthly statements.

Ms. Calhoun further argues that the remaining allegations against her, which she contends are unrelated to the allegation that she failed to provide Mr. Schell with monthly statements, did not support the severe sanction of suspension of her license to practice law. Ms. Calhoun characterizes these alleged violations as failing to label her separate attorney trust account as "attorney trust account;" failing to interview and depose witnesses because the case settled due to a tentative perjury charge against Mr. Schell; and charging a late fee to Mr. Schell because he failed to pay his bill timely although there was no provision in the retainer agreement for charging a late fee.

Ms. Calhoun also asserts that certain findings by the Maryland Court were plainly wrong. In particular, Ms. Calhoun argues that the Maryland Court was plainly wrong in finding that she misled Mr. Schell with regard to the date when his federal court case was dismissed. Ms. Calhoun also says that the Maryland Court was plainly wrong in finding that she failed to promptly notify Mr. Schell when she received his settlement funds.

Pursuant to Syllabus Point 1 of *Post, supra*, Maryland's disciplinary adjudication conclusively establishes Ms. Calhoun's misconduct. Consequently, we cannot interfere with the Maryland Court's decision unless "the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that [this Court] cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction." W.Va. R.Lwyr.Disc.Pro. 3.20(e)(2). The record shows that the Maryland Court determined that whether or not monthly fee statements were sent to Mr. Schell was irrelevant be-

cause the statements Ms. Calhoun produced and claimed that she sent to Mr. Schell were inadequate to satisfy her responsibility to her client. In that regard, the Maryland Court noted that the statements allegedly sent by Ms. Calhoun to Mr. Schell were essentially identical with the exception of the dollar amounts and failed to indicate the amount of the fee that had been earned or what costs had been paid. In light of its determination that the monthly statements Ms. Calhoun claimed she sent to Mr. Schell were inadequate, the Maryland Court did not need to determine whether or not they were actually received by Mr. Schell.

The record further shows that additional evidence submitted during the hearings in Maryland established that Ms. Calhoun violated several Rules of Professional Conduct which warranted the suspension of her law license. The Maryland Court determined that Ms. Calhoun failed to provide representation that was expected of her by her client; failed to act with reasonable diligence and promptness; failed to keep her client reasonably informed about the status of his case; failed to promptly comply with reasonable requests for information; failed to safekeep property; co-mingled the settlement with her personal funds; and engaged in conduct prejudicial to the administration of justice.

While Ms. Calhoun argues that she did not mislead Mr. Schell with regard to the date his case was dismissed by the federal court, Ms. Calhoun completely ignores the fact that the evidence showed that at the time she sent Mr. Schell a letter informing him that his case had not been dismissed, she had already received the settlement funds and deposited them into her personal account. Clearly, Ms. Calhoun had the power to obtain the dismissal of the case by informing the court of the settlement. The Maryland Court's determination that Ms. Calhoun's conduct was deceitful and misleading was clearly supported by the evidence. Likewise, Ms. Calhoun's claim that she did not fail to promptly notify Mr. Schell of her receipt of the settlement funds has no merit. The evidence clearly established that Ms. Calhoun kept this information from Mr. Schell for more than a year.

In sum, we cannot say that the evidence was so infirm as to justify our not accepting

as final the Maryland Court's conclusion that Ms. Calhoun violated Rules 1.1, 1.3, 1.4, 1.5, 1.15, 8.4(a), 8.4(c) and 8.4(d) of the Maryland Rules of Professional Conduct as well as Maryland Rule 16.609. In light of the record before this Court, we find that Rule 3.20(e)(2) provides no basis for not imposing reciprocal discipline.

Finally, Ms. Calhoun argues that imposition of the same discipline would result in a grave injustice and that a different sanction is warranted in this State given the facts and circumstances of her case. Ms. Calhoun points out that the Maryland Court did not find that her conduct was intentionally fraudulent. Ms. Calhoun argues that this Court has only suspended an attorney's license when the attorney has engaged in conduct that was intentional and knowing. In conclusion, Ms. Calhoun maintains that because the Maryland Court specifically found that none of her actions were intentionally fraudulent or dishonest, a different sanction is warranted in this State.

■ "This Court, like most courts, proceeds from the general rule, that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 499, 513 S.E.2d 722, 726 (1998). For example, in *Lawyer Disciplinary Board v. Battistelli*, 206 W.Va. 197, 523 S.E.2d 257 (1999), this Court annulled the license of an attorney who, *inter alia*, withheld a portion of his client's settlement funds. Also, in *Lawyer Disciplinary Board v. Wheaton*, 216 W.Va. 673, 610 S.E.2d 8 (2004), this Court annulled the license of an attorney who converted his client's funds to his own use. While Mr. Wheaton violated several other Rules of Professional Conduct, the decision to annul his license was based primarily on the fact that he misappropriated client funds. 216 W.Va. at 684, 610 S.E.2d at 19.

The record shows that the Maryland Court imposed a sentence of indefinite suspension, as opposed to disbarment, because it found that Ms. Calhoun's conduct was not intentionally fraudulent. The Court also took into account the fact that the charges arose out of a single incident and that Ms. Calhoun had no prior disciplinary history. Nonetheless, the Maryland Court specifically found that Ms. Calhoun had engaged in conduct that was deceitful and misleading. She took a settlement check of $8,000.00, deposited it into her personal account, and then failed to apprise her client regarding the settlement for more than a year. Given these facts, we cannot say that a grave injustice will occur if this Court imposes the same discipline as the Maryland Court, nor do we find that a different sanction is warranted. In other words, Rules 3.20(e)(3) and (4) provide no basis for not imposing reciprocal discipline.

## IV.

### CONCLUSION

Based on all the above, we find no justification for not imposing the identical sanction imposed by the Maryland Court. Accordingly, we affirm our prior order entered on May 22, 2007, which ordered that the license to practice law in the State of West Virginia of Candace K. Calhoun be indefinitely suspended and further ordered that Ms. Calhoun be permitted to file a petition for reinstatement with this Court once she has been reinstated by the Maryland Court.

Indefinite Suspension.