461 S.E.2d 60

**LAWYER DISCIPLINARY BOARD, Respondent,**

v.

**George B. VIEWEG II, A Former Member of the West Virginia State Bar, Petitioner.**

**No. 22777.**

Supreme Court of Appeals of West Virginia.

Submitted May 30, 1995.

Decided July 11, 1995.

Ellen F. Golden, Lawyer Disciplinary Counsel, Charleston, for respondent.

George A. Daugherty, Daugherty Law Offices, Elkview, for petitioner.

CLECKLEY, Justice:

This case is before this Court upon the petition of George B. Vieweg II for reinstatement to the practice of law in West Virginia. We referred this case to the Lawyer Disciplinary Board of The West Virginia State Bar for the development of a record and recommendation.[1] That process having been completed, Disciplinary Counsel of the Lawyer Disciplinary Board recommends that Mr. Vieweg be reinstated. Upon a review of the record and the briefs[2] and argument of counsel, this Court concludes that reinstatement should be granted, subject to the terms and conditions described below.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Mr. Vieweg was a member of the law firm of Bailey, Byrum & Vieweg in Wheeling, West Virginia. The record indicates that until January 1988, Mr. Vieweg · suffered from an addiction to alcohol, which included the time he was a member of the firm. His addiction resulted in a wide-ranging course of financial misconduct and a lifestyle beyond his means, which culminated in 1987 and early 1988.

As determined by Disciplinary Counsel and the Hearing Panel Subcommittee of the Lawyer Disciplinary Board, Mr. Vieweg took funds from the law firm without authorization and, in addition, misappropriated monies from various clients, resulting in the liability of the firm.[3] Moreover, the record indicates that Mr. Vieweg converted monies from a private dinner club to his own use while a member of the board of directors of the club. Also, the record indicates that Mr. Vieweg, as trustee of a family trust, converted trust funds to his own use without the authorization of the beneficiaries.

Mr. Vieweg's misconduct was more extensive, nevertheless, with regard to the obtaining of loans from various banking institutions. As Disciplinary Counsel and the Hearing Panel Subcommittee have detailed, Mr. Vieweg developed a ritual of borrowing from one bank to pay another and misrepresenting his financial status and reasons for the loans. Several banks lost substantial sums of money as a result of Mr. Vieweg's conduct.[4]

---

1. The petition for reinstatement was filed with this Court on August 27, 1993, and the case was referred to the Committee on Legal Ethics for consideration under the reinstatement procedures of Article VI of the By–Laws of The West Virginia State Bar. Article VI was superseded, however, by this Court's adoption of the West Virginia Rules of Lawyer Disciplinary Procedure. The Rules became effective on July 1, 1994.

As reflected by the parties and in the March 22, 1995, order scheduling this case for submission before this Court, this matter is considered to be a petition for reinstatement, following annulment, under Rule 3.33 of the Rules of Lawyer Disciplinary Procedure. In particular, the respective recommendations of Disciplinary Counsel and the Hearing Panel Subcommittee in this case were filed on behalf of the "Lawyer Disciplinary Board" created under the new rules.

2. James H. Coleman, a member of the West Virginia State Bar, was granted leave to file a brief *amicus curiae* in this matter.

3. The misconduct of Mr. Vieweg with regard to the law firm and its clients is substantially set forth in a letter dated March 11, 1988, from James A. Byrum concerning Mr. Vieweg's subsequent petition for bankruptcy. The factual matters set forth in the letter are consistent with the factual summary submitted by Disciplinary Counsel and with the findings of the Hearing Panel Subcommittee. One example concerns Mr. Vieweg's representation of a client in a personal injury action:

"In March, 1987 the case settled. [The client] executed a release and received two checks, in the amounts of $50,000.00 and $5,941.00, respectively, made payable jointly to her and George Vieweg.... [The client] endorsed the checks and turned them over to George. The $50,000.00 check was dated March 16, 1987. We have learned that these checks were deposited in George's checking account on March 16, 1987, and apparently converted to his own use, since following this deposit various checks in substantial amounts were issued to banks and individuals, thereby exhausting all the funds belonging to [the client]. We have agreed to pay the amount due her which, after George's fee and deductible, will be in the sum of $39,274.40."

4. One of several examples of Mr. Vieweg's conduct with regard to banking institutions appears in both the factual summary submitted by Disciplinary Counsel and in the findings of the Hearing Panel Subcommittee:

"On November 2, 1987, The Buckeye Savings and Loan ('The Buckeye') loaned Petition-

On January 16, 1988, subsequent to the above-described misconduct, an intervention team from The West Virginia State Bar persuaded Mr. Vieweg to enter the Preston Addiction Treatment Center in Kingwood, West Virginia. Mr. Vieweg remained at the Treatment Center for approximately twenty-eight days and cooperated fully with the Center's treatment program for alcoholism.[5]

Following his discharge from the Preston Addiction Treatment Center, Mr. Vieweg entered the Kanawha Valley Fellowship Home for recovering alcoholics and remained there for several months. His sponsor concerning his recovery and his attorney with regard to these proceedings is George A. Daugherty of Elkview, West Virginia. Mr. Vieweg currently resides in the Charleston, West Virginia, area and has worked successfully as a paralegal in recent years for the West Virginia Department of Transportation, the law firm of Bowles, Rice, McDavid, Graff & Love, the law firm of Caldwell, Cannon–Ryan & Riffee, and the Daugherty Law Offices. Mr. Vieweg has not practiced law since January 16, 1988.

By order entered May 18, 1988, this Court accepted Mr. Vieweg's voluntary resignation as a member of The West Virginia State Bar. In the same month, Mr. Vieweg filed for bankruptcy. The following year, Mr. Vieweg entered a plea of guilty in the United States District Court for the Northern District of West Virginia to a felony offense arising in 1986 of knowingly submitting a false financial statement to a bank concerning a loan. 18 U.S.C. § 1014 (1988). Mr. Vieweg was placed on probation following his plea to that offense. Nevertheless, by order entered July 27, 1989, this Court converted Mr. Vieweg's voluntary resignation from the Bar to an annulment of his license to practice law based upon the felony conviction.

On August 27, 1993, Mr. Vieweg filed a petition for reinstatement with this Court. *See* note 1, *supra.* Evidentiary hearings were conducted in Wheeling and in Charleston by the Hearing Panel Subcommittee of the Lawyer Disciplinary Board. Thereafter, the Hearing Panel Subcommittee filed with this Court its findings and recommendation concerning Mr. Vieweg's reinstatement. *See* Rule 3.10, Rules of Lawyer Disciplinary Procedure.

Recommending that Mr. Vieweg's petition for reinstatement be denied, the Hearing Panel Subcommittee concluded:

"[T]he harm caused by Petitioner to his family, friends, partners, business associates, banking institutions, as well as the damage which would be caused to the public's perception of the administration of justice if he were to be reinstated to the practice of law, outweighs Petitioner's excellent rehabilitative efforts since January 16, 1988."

Both Disciplinary Counsel and Mr. Vieweg, however, objected to the recommendation of the Hearing Panel Subcommittee. *See* Rules 3.11 and 3.33(c), Rules of Lawyer Disciplinary Procedure. Indicating that the Hearing Panel Subcommittee overemphasized Mr. Vieweg's past conduct rather than his present character and undisputed rehabilitation, Disciplinary Counsel filed with this Court a recommendation stating that Mr. Vieweg should be reinstated.

## II.

### DISCUSSION

Rule 3.33 of the Rules of Lawyer Disciplinary Procedure states that an annulment of a license to practice law "shall revoke and ter-

er [Mr. Vieweg] $50,000.00 secured by what was represented by Petitioner as a second deed of trust upon Petitioner's residence. Subsequently, The Buckeye learned of Wheeling National Bank's first and second deed of trust. The Buckeye was required to purchase the property, pay off Wheeling National Bank's first and second mortgages and resell the property. The Buckeye claimed a loss....
"Petitioner's stated purpose for the $50,000.00 loan from The Buckeye was to purchase a partnership in his law firm. The testi-

mony of Mr. Byrum indicated that each partner was to contribute $10,000.00."

5. Mr. Vieweg's discharge summary from the Preston Addiction Treatment Center, dated February 19, 1988, states that Mr. Vieweg "made steady gains throughout the treatment process and it is taken as a positive sign that he has complied with staff recommendations for continuing care."

minate such license, and shall constitute a disbarment." The rule further provides:

"(b) After the expiration of five years from the date of disbarment, a person whose license to practice law has been or shall be annulled in this State and who shall desire reinstatement of such license may file a verified petition in the Supreme Court of Appeals reciting the cause of such annulment and what the person shall have done in satisfaction of requirements as to rehabilitation, restitution, conditions or other acts incident thereto, by reason of which the person should be reinstated as a member of the state bar and his or her license to practice law restored."

■ In addition, Rule 3.33(c) provides that the Hearing Panel Subcommittee shall conduct a hearing concerning the proposed reinstatement and prepare a written report and recommendation for this Court. Under Rule 3.33(c), after the filing of the Hearing Panel Subcommittee's report and recommendation, either the petitioner or Disciplinary Counsel shall have the right to request a hearing before this Court concerning reinstatement.

The hearing to be conducted by the Hearing Panel Subcommittee under Rule 3.33(c) is an evidentiary one, which evolved from a recognition by this Court that such a hearing is needed to make factual inquiries, establish a record for appellate review, and inform the parties and the public of the care and thoroughness taken in the resolution of important judicial issues. *In Re Brown,* 164 W.Va. 234, 238, 262 S.E.2d 444, 446 (1980). As Syllabus Point 2 of *Brown* states:

"In cases involving reinstatement proceedings, we require, under this Court's supervisory powers, that the Committee on Legal Ethics of The West Virginia State Bar shall hold an evidentiary hearing to enable a record to be made on the issues relating to the petitioner's qualifications to have his license reinstated."

*Committee on Legal Ethics v. Boettner,* 183 W.Va. 136, 140, 394 S.E.2d 735, 739 (1990), *cert. denied,* — U.S. —, 113 S.Ct. 209, 121 L.Ed.2d 149 (1992); *Committee on Legal Ethics v. Douglas,* 179 W.Va. 490, 500, 370 S.E.2d 325, 335 (1988); *Matter of Sommerville,* 178 W.Va. 694, 698, 364 S.E.2d 20, 24

(1987); *State v. Houston,* 166 W.Va. 202, 207, 273 S.E.2d 375, 378 (1980).

In conducting the evidentiary hearing and making a recommendation to this Court, the Lawyer Disciplinary Board, through its Disciplinary Counsel and Hearing Panel Subcommittee, is functioning, as did the former Committee on Legal Ethics, as an administrative arm of this Court. Syl. pt. 2, *Daily Gazette Co., Inc. v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984). In fact, as we reaffirmed in *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 288, 452 S.E.2d 377, 379 (1994), the authority of the Supreme Court of Appeals to regulate and control the practice of law in West Virginia, including the lawyer disciplinary process, is constitutional in origin. W.Va. Const. art. VIII, § 3; Syl. pt. 1, *Daily Gazette, supra. See also,* Syl. pt. 1, *Committee on Legal Ethics v. Craig,* 187 W.Va. 14, 415 S.E.2d 255 (1992).

■ In that context, the standard of review by this Court with regard to the disciplinary process, including reinstatement cases, is the same under the new Rules of Lawyer Disciplinary Procedure as it was with regard to the former Committee on Legal Ethics. As Syllabus Point 3 of *McCorkle* states:

"A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."

In the case before this Court, Disciplinary Counsel and the Hearing Panel Subcommittee based their respective recommendations to this Court upon *In Re Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980), a decision subse-

quent to *In Re Brown, supra,* involving the same attorney.

 In the latter *Brown* decision, this Court denied reinstatement to an attorney who had been convicted of conspiracy to commit bribery and the bribery of a juror. The Committee on Legal Ethics opposed reinstatement. In denying reinstatement, this Court focused upon the seriousness of the underlying offenses rather than upon the attorney's efforts as to rehabilitation. However, in Syllabus Points 1 and 2, the following standards concerning reinstatement to the practice of law after disbarment were set forth:

"1. The general rule for reinstatement is that a disbarred attorney in order to regain admission to the practice of law bears the burden of showing that he presently possesses the integrity, moral character and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment he must demonstrate a record of rehabilitation. In addition, the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration of justice and in this regard the seriousness of the conduct leading to disbarment is an important consideration.

"2. Rehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct."

Syl. pts. 8 and 9, *Committee on Legal Ethics v. Farber,* 185 W.Va. 522, 408 S.E.2d 274 (1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992); Syl. pts. 1 and 2, *Committee on Legal Ethics v. Pence,* 171 W.Va. 68, 297 S.E.2d 843 (1982); 7 Am. Jur.2d *Attorneys at Law* 98–100 (1980); 7A C.J.S. *Attorney and Client* 122–30 (1980); Annot., *Reinstatement of Attorney After Dis-*

*barment, Suspension, or Resignation,* 70 A.L.R.2d 268 (1960).

The transcripts and exhibits in this case are voluminous. The evidence adduced at the hearing conducted in Wheeling consisted principally of the testimony of one of Mr. Vieweg's law partners and several officers of banking institutions, all of whom described acts of financial misconduct committed by Mr. Vieweg prior to his entry into the Preston Addiction Treatment Center in January, 1988. Although those witnesses expressed negative sentiments toward Mr. Vieweg and expressed the view that those sentiments were shared by various segments of the public and business community in the Wheeling area, the majority of the witnesses indicated either no opinion concerning Mr. Vieweg's reinstatement or stated that reinstatement would be acceptable if Mr. Vieweg's practice were supervised. Two witnesses indicated Mr. Vieweg should not be reinstated.

In contrast, the evidence adduced at the hearing conducted in Charleston focused upon Mr. Vieweg's circumstances since January, 1988, and was largely supportive of reinstatement. The witnesses testifying at the Charleston hearing included the employers of his paralegal work for the West Virginia Department of Transportation, the law firm of Bowles, Rice, McDavid, Graff & Love, and the law firm of Caldwell, Cannon–Ryan & Riffee. Each of those employers testified favorably as to Mr. Vieweg's integrity, legal competence, and rehabilitation from alcoholism. They further indicated that Mr. Vieweg's rehabilitation would inspire others. In addition, Mr. Daugherty, Mr. Vieweg's attorney and sponsor in his recovery, made a statement to the Hearing Panel Subcommittee in favor of reinstatement.[6]

 This Court is not unmindful that general statements and letters from attorneys, friends, and community leaders on behalf of a petitioner in a reinstatement proceeding are of little evidentiary value. *In Re Brown,* 164 W.Va. at 236 n. 1, 262 S.E.2d at 445 n. 1. However, with regard to the required show-

---

6. Mr. Daugherty's statement to the Hearing Panel Subcommittee during the hearing conducted in Charleston is consistent with his letter dated August 26, 1993, to The West Virginia State Bar.

That letter states, in part: "I know of no one who has worked harder than George in both rehabilitation and continued study of and working with the law."

ing of present integrity, moral character, and legal competence required in Syllabus Point 1 of *In Re Brown, supra*, the testimony adduced in support of reinstatement was more objective in that it came from employers and a sponsor, who had almost daily contact with Mr. Vieweg in the years following his entry into the Preston Addiction Treatment Center. Moreover, the record demonstrates that Mr. Vieweg has been forthright in admitting his misconduct and has discussed his actions with some of those who have suffered from the misconduct. He cooperated fully with the federal prosecutor and successfully completed the period of probation following his conviction.

With regard to competence in the law, Mr. Vieweg has kept up with the continuing education requirements of The West Virginia State Bar and his work as a paralegal has involved a variety of subject areas, including real property and tort litigation.

Mr. Vieweg has also demonstrated a record of rehabilitation. The report of the Hearing Panel Subcommittee specifically states Mr. Vieweg "has demonstrated a record of rehabilitation from alcoholism." Although recovery from alcoholism is an ongoing process, the record is barren of any problems after January, 1988. The record includes Mr. Vieweg's five-year certificate of sobriety from Alcoholics Anonymous. The record indicates Mr. Vieweg has attempted to help others who suffer from alcoholism.

The effect of reinstatement upon public confidence in the administration of justice is more problematic. Those who associated with Mr. Vieweg prior to January, 1988, were of the opinion that the effect would be adverse, and those who associated with Mr. Vieweg after January, 1988, were strongly in favor of reinstatement and indicated Mr. Vieweg's rehabilitation would serve as a positive example to others. The evidence before us suggests that Disciplinary Counsel is correct in her assessment that Mr. Vieweg became "a fundamentally different person after January 16, 1988."

Although, as discussed above, we are not bound by the recommendation of Disciplinary Counsel, the record supports reinstatement. In particular, the evidence demonstrates that

Disciplinary Counsel is correct in her conclusions that: (1) No one associated with Mr. Vieweg after January, 1988, had any negative comment or reservation concerning his integrity or moral character; (2) Mr. Vieweg through his spouse and friends has sufficient support to make his continued sobriety more likely; and (3) viewed and weighed objectively, it is reasonable to conclude Mr. Vieweg's reinstatement will not have an adverse effect upon public confidence in the administration of justice. Accordingly, we give due weight to Disciplinary Counsel's recommendation. *McCorkle*, 192 W.Va. at 289, 452 S.E.2d at 380.

Based on the foregoing, this Court is of the opinion that Mr. Vieweg has met the burden of showing that he is entitled to reinstatement to the practice of law in West Virginia. However, in consideration of the seriousness of Mr. Vieweg's misconduct leading to the annulment of his license, his reinstatement must be accompanied by substantial terms and conditions. *See* Rule 3.33(f), Rules of Lawyer Disciplinary Procedure. Mr. Vieweg's reinstatement will not take effect until January 1, 1996. His practice of law upon reinstatement shall be supervised for five years. Mr. Vieweg shall continue his rehabilitation program with Alcoholics Anonymous, and he shall continue to repay past debts with regard to his misconduct. In addition, The West Virginia State Bar shall monitor Mr. Vieweg's practice and shall require of Mr. Vieweg and his supervisor quarterly reports concerning his practice and adherence to these terms and conditions.

By way of the terms and conditions placed upon Mr. Vieweg's reinstatement to the practice of law, we emphasize, as did former Justice Miller in his dissenting opinion in *In Re Smith*, 166 W.Va. 22, 270 S.E.2d 768 (1980), that the high standards required of attorneys who practice in this State must be consistently maintained.

Finally, we believe it is necessary to address an important procedural matter arising from the circumstances of this case. We take serious notice of the fact that in this appeal Disciplinary Counsel and the Hearing Panel Subcommittee filed conflicting recom-

mendations before this Court. Moreover, during the argument of this case, Disciplinary Counsel made it clear she was presenting her views of the case and not the recommendations of the Hearing Panel Subcommittee. Although Disciplinary Counsel stated both she and the Hearing Panel Subcommittee represented the public interest, it is clear to us that neither the views nor the recommendations of the Hearing Panel Subcommittee were represented on this appeal. The findings and recommendations of the Hearing Panel Subcommittee are of vital importance to this Court. As we stated in *McCorkle:* "To ignore these recommendations and conclusions would render the [Subc]ommitte's important adjudicatory role a useless gesture and deprive this Court of the most important benefit of its collective and evaluative judgment." 192 W.Va. at 289, 452 S.E.2d at 380.

It should be made clear that the Rules of Lawyer Disciplinary Procedure, adopted by this Court in 1994, do in fact provide a procedural opportunity for Disciplinary Counsel to appear before this Court in disciplinary matters. Although those Rules provide that Disciplinary Counsel may object to a report filed by the Hearing Panel Subcommittee, we did not contemplate the appearance of Disciplinary Counsel before us with conflicting recommendations. *See* Rule 3.11. To resolve any future tension between the language of the Rules and the views of this Court, we will give the Rules an extensive administrative reexamination. In the interim, we believe it is necessary to provide some guidance for cases that will be filed in this Court before the administrative process is completed.

■ Accordingly, as to future cases, we hold that where a conflict exists between Disciplinary Counsel and the Hearing Panel Subcommittee with regard to the recommendations concerning a petition for reinstatement to the practice of law or other disciplinary proceedings, Disciplinary Counsel shall notify the Hearing Panel Subcommittee of the existence of the conflict. If the conflict is not resolved in advance, the Hearing Panel Subcommittee shall have the right to representation by separate counsel before this Court upon review of the petition.

This case is remanded to the West Virginia Lawyer Disciplinary Board for proceedings consistent with this opinion.

Reinstatement as of January 1, 1996, Five Years Supervised Practice, Continuation of Alcoholics Anonymous Program, Continuation of Payment of Past Debts, and State Bar to Monitor Practice.

BROTHERTON J., did not participate.

McHUGH, C.J., and RECHT, J., deeming themselves disqualified, did not participate in the consideration or decision of this case.

FOX, Judge, sitting by temporary assignment.