IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 18-0836

_____

FILED
**June 14, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: PETITION FOR REINSTATEMENT OF KEITH L. WHEATON

_____

Lawyer Disciplinary Proceeding

REINSTATED SUBJECT TO CONDITIONS

_____

Submitted: May 5, 2021
Filed: June 14, 2021

Keith L. Wheaton                           Rachael L. Fletcher Cipoletti, Esq.
*Pro Se*                                    Chief Lawyer Disciplinary Counsel
Laurel, Maryland                           Office of Disciplinary Counsel
Petitioner                                 Charleston, West Virginia
                                           Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.     "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syllabus Point 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

2.     "'A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.'  Syllabus Point 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994)."   Syllabus Point 2, *In re Reinstatement of diTrapano*, 240 W. Va. 612, 814 S.E.2d 275 (2018).

3.     "The general rule for reinstatement is that a disbarred attorney in order to regain admission to the practice of law bears the burden of showing that he presently possesses the integrity, moral character and legal competence to resume the practice of law.  To overcome the adverse effect of the previous disbarment[,] he must demonstrate a record of rehabilitation.  In addition, the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration

i

of justice and in this regard the seriousness of the conduct leading to disbarment is an important consideration." Syllabus Point 1, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980).

4.      "Rehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that[,] after such rehabilitation is completed and the applicant is readmitted to the practice of law[,] he will engage in unprofessional conduct." Syllabus Point 2, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980).

WALKER, Justice:

For the second time, Keith L. Wheaton petitions this Court for reinstatement of his license to practice law in West Virginia, which was annulled in 2005 as a result of several, serious acts of misconduct. When we denied his first petition for reinstatement in 2011, we concluded that Mr. Wheaton had failed to satisfy any of the requirements for reinstatement that we enumerated in the order annulling his license. And, we determined that he had neither demonstrated a record of rehabilitation nor shown that he possessed the integrity, moral character, and legal competence to resume the practice of law. In stark contrast to his first petition for reinstatement, Mr. Wheaton now presents evidence of his rehabilitation and that he has complied with, or is in the process of complying with, the requirements we set for his reinstatement. The Hearing Panel Subcommittee (HPS) found that Mr. Wheaton's license should be reinstated with conditions. While the Office of Disciplinary Counsel (ODC) does not join in that recommendation because Mr. Wheaton has not "fully satisfied" the reinstatement requirements set in 2005, it also does not oppose Mr. Wheaton's reinstatement.

Based upon his demonstrated rehabilitation, and his compliance with the requirements for reinstatement, we now reinstate Mr. Wheaton's law license, but with conditions, including: (1) supervision for a period of three years by a supervising attorney who will file monthly reports with the ODC; (2) annual auditing of all accounts associated with his practice by a certified public accountant (CPA) for a period of three years; (3) continued payment of the outstanding balances on the Mason judgment and the costs owed

1

to the Lawyer Disciplinary Board (LDB) in compliance with the now-executed payment plans; (4) payment of all dues to the West Virginia State Bar; and (5) reimbursement to the LDB of the costs of the reinstatement proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Wheaton was admitted to the practice of law on May 1, 1995.  He initially worked for a year in the criminal investigation division at the State Tax Department in Charleston.  In May 1996, he moved to Martinsburg, opened his own practice, and almost immediately started engaging in the misconduct that would lead to his disbarment.  Specifically, from 1997 to 2002, Mr. Wheaton committed a series of misdeeds that included misappropriation and conversion of client funds; making material misrepresentations to clients, a bankruptcy trustee, bankruptcy court, and counsel for the ODC; failing to communicate with clients; and failing to diligently pursue claims on behalf of clients.[1]  As a result of this conduct, several complaints were filed with the LDB, and the ODC conducted an investigation, ultimately finding that Mr. Wheaton had committed 31 separate violations of the Rules of Professional Conduct.  The HPS recommended annulment of Mr. Wheaton's license, and this Court agreed.  In so doing, we adopted the LDB's recommendation that

---

[1] The facts surrounding these instances of misconduct are more fully set forth in *Lawyer Disciplinary Board v. Wheaton*, 216 W. Va. 673, 610 S.E.2d 8 (2004) (hereinafter *Wheaton I*).

should Mr. Wheaton seek reinstatement after the prescribed five-year period under Rule 3.33 of the Rules of Lawyer Disciplinary Procedure, he should be required to: (1) reimburse clients who were injured by his misconduct and who he never repaid as follows: Ms. Christensen in the amount of $450.00, Mr. Pruden in the amount of $300.00, and Ms. Mason in the amount of $500.00; (2) fully satisfy the judgment assessed against him by the federal bankruptcy court due to his misconduct in the underlying case of his client, Ms. Mason; (3) demonstrate that he has an understanding of the Rules of Professional Conduct and that he undertake an additional eighteen hours of ethics and office management continuing legal education; (4) submit to supervised practice for a period of at least two years; and (5) reimburse the [LDB] for the costs of [the disciplinary] proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.[2]

## A.    *The First Petition for Reinstatement*

Mr. Wheaton, pursuant to Rules 3.30 and 3.33 of the Rules of Lawyer Disciplinary Procedure, first sought reinstatement to the practice of law on January 20, 2010. The ODC investigated, and the HPS conducted a two-day hearing on the petition. Apart from Mr. Wheaton, thirteen witnesses testified at the hearing, and, while several testified to Mr. Wheaton's rehabilitation and good moral character, others opposed Mr. Wheaton's reinstatement to the practice of law. Several months later the HPS recommended this Court deny the petition for reinstatement.

In making this recommendation, the HPS considered not only Mr. Wheaton's pre-annulment misconduct, but also evidence of his actions in the years since his disbarment. The HPS found that, in 2005, Mr. Wheaton had discharged approximately

---

[2] *Wheaton I*, 216 W. Va. at 680 n. 30, 610 S.E.2d at 15 n. 30.

3

fifteen actual or potential legal malpractice suits totaling $85,000 in bankruptcy. He also had tens of thousands of dollars in child support arrearages in both West Virginia and North Carolina. And, he pled guilty to a misdemeanor in North Carolina involving the unauthorized use of a vehicle. He was also the subject of a default judgment in the Commonwealth of Virginia for a $2,000.00 unpaid personal loan, as well as a $4,831.93 judgment resulting from a vehicle repossession. Finally, Mr. Wheaton had been the subject of two worthless check warrants.[3]

During oral argument on the first petition for reinstatement, Mr. Wheaton conceded that he had failed to satisfy any of the enumerated requirements for reinstatement set by this Court. He contended that he was unable to pay restitution to his former clients or to reimburse the LDB because he was unable to obtain steady employment in order to earn sufficient funds to satisfy those obligations. Ultimately, this Court concluded that Mr. Wheaton had failed to: (1) satisfy the requirements for reinstatement set forth in *Wheaton I*; (2) demonstrate that he possessed the "integrity, moral character and legal competence to resume the practice of law"; (3) establish that, if reinstated, he would not engage in future unprofessional conduct; and (4) show that his reinstatement to the practice of law would not have a "justifiable and substantial adverse effect on the public confidence in the

---

[3] The record indicates that both of those warrants were dismissed prior to our decision on Mr. Wheaton's first petition for reinstatement.

administration of justice." So, we denied his petition for reinstatement by memorandum decision on November 17, 2011.[4]

## B.     *The Present Petition for Reinstatement*

Seven years later, on September 26, 2018, Mr. Wheaton filed a second petition for reinstatement. The ODC performed an investigation and filed its report with the HPS on February 19, 2020. The HPS held hearings on June 26, 2020, and September 1, 2020.[5] In addition to his own testimony, Mr. Wheaton presented three witnesses who testified on his behalf: Paul Taylor, Esq.; Manuel Washington; and Jay Mullen. The HPS further admitted sixteen exhibits from the ODC.

Based upon the testimony and evidence presented, the HPS made numerous findings illustrating a marked change from Mr. Wheaton's first petition for reinstatement. Since the denial of his first petition, Mr. Wheaton has been employed in several jobs, both in and out of the legal field. Of particular note, in 2018, he obtained a position as a paralegal for the Office of Wage and Hour Department of Employment Services for the city government of Washington, D.C. Mr. Wheaton remains in that position and has recently had his employment contract renewed. As a result of this steady employment, Mr.

---

[4] *Wheaton v. Lawyer Disciplinary Board*, No. 35462, 2011 WL 8186639 (November 17, 2011) (memorandum decision) (hereinafter *Wheaton II*).

[5] The record indicates this significant gap resulted from Mr. Wheaton's request for a continuance so that he could secure the attendance of witnesses who had been unable to appear due to the difficulties posed by the COVID-19 pandemic.

Wheaton is making timely child support payments and is working to pay off his remaining arrearage in that regard.

And, the HPS found that Mr. Wheaton paid full restitution to Ms. Christensen, Mr. Pruden, and Ms. Mason. While Mr. Wheaton has not fully satisfied the $45,000.00 bankruptcy judgment in the Mason matter, he expressed a willingness to execute a payment plan in order to do so. The HPS similarly determined that Mr. Wheaton had not reimbursed the LDB for its costs in investigating and litigating the disciplinary proceedings against him, but that he was also willing to execute a payment plan to begin satisfying that obligation. Finally, the HPS determined that, for the 2018-2020 reporting period, Mr. Wheaton had reported a total of 34.80 hours of continuing legal education (CLE), including 19.30 hours in legal ethics and law office management.

On January 26, 2021, the HPS issued its Recommended Decision based on these findings, recommending that Mr. Wheaton's license to practice law be reinstated on the following conditions:

> 1. [Mr. Wheaton] must execute payment plans for all outstanding restitution, with the Mason judgment receiving priority, and begin making payments prior to any decision regarding reinstatement; and
>
> 2. [Mr. Wheaton] shall be returned to probation with supervised practice and, if in private practice, shall have all accounts associated with his law practice audited by a certified public accountant for a period of two years.

The ODC did not endorse this recommendation because Mr. Wheaton has not fully satisfied the Mason judgment or reimbursed the costs owed to the LDB. However, the ODC stated that it would not oppose Mr. Wheaton's reinstatement if he executed payment plans to satisfy those obligations and began making payments prior to his reinstatement.

On February 18, 2021, the ODC filed a motion to supplement the appendix record in this matter with documents indicating that Mr. Wheaton had executed the following payment plans: (1) a monthly payment of $250.00 toward the $45,000.00 Mason judgment; and (2) a monthly payment of $100.00 toward the $13,353.39 in costs owed to the LDB. That supplement also includes a letter from Mr. Wheaton indicating that he intends to increase the amounts of those payments upon the improvement of his financial circumstances. In addition, the record contains copies of two money orders reflecting Mr. Wheaton's first payments on the executed payment plans.[6]

## II. STANDARD OF REVIEW

We have long held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decision about public reprimands, suspension or annulments of attorneys' licenses to practice law."[7] While we give respectful consideration

---

[6] Mr. Wheaton informed the Court of these payments by letter dated February 9, 2021. He informed the ODC of the payment plans on February 10, 2021, as evidenced by the supplemental appendix the ODC supplied to this Court on February 18, 2021.

[7] Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

7

to the recommendations of the HPS, this Court ultimately exercises its own independent

judgment regarding reinstatement:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.[8]

As the parties do not dispute the HPS's findings of fact, we proceed to review

de novo the HPS's recommendation regarding reinstatement.

## III. ANALYSIS

In reinstatement proceedings, the party seeking reinstatement has the burden

of showing that he or she should be permitted to resume the practice of law in West

Virginia. This Court has held

> [t]he general rule for reinstatement is that a disbarred attorney in order to regain admission to the practice of law bears the burden of showing that he presently possesses the integrity, moral character and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment, he must demonstrate a record of rehabilitation. In addition, the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the

---

[8] Syl. Pt. 2, *In re Reinstatement of diTrapano*, 240 W. Va. 612, 814 S.E.2d 275 (2018) (quoting Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994)).

public confidence in the administration of justice and in this regard the seriousness of the conduct leading to disbarment is an important consideration.[9]

And, "in assessing an application for reinstatement[,] consideration must be given to the nature of the original offense for which the applicant was disbarred. Obviously, the more serious the nature of the underlying offense, the more difficult the task becomes to show a basis for reinstatement."[10]

Our first task is to examine the offenses leading to Mr. Wheaton's disbarment. While there were several offenses, they can generally be summarized as follows: (1) misappropriation and conversion of client funds; (2) making material misrepresentations to clients, courts, and counsel for the ODC; (3) failing to communicate with clients; and (4) failing to diligently pursue cases on behalf of clients. Undeniably, each of these offenses is serious and must serve as a backdrop in our analysis of whether to reinstate Mr. Wheaton's license to practice law. With that in mind, we now address whether Mr. Wheaton has demonstrated a record of rehabilitation sufficient to "overcome the adverse effect" of his misconduct.

We have held that "[r]ehabiliation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that[,] after such rehabilitation is

---

[9] Syl. Pt. 1, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980).

[10] *Id*. at 234, 273 S.E.2d at 571.

9

completed and the applicant is readmitted to the practice of law[,] he will engage in unprofessional conduct."[11] We have set out a five-factor test to evaluate a petitioner's rehabilitation, stating that we must consider:

> (1) the nature of the original offense for which the petitioner was disbarred, (2) the petitioner's character, maturity, and experience at the time of his disbarment, (3) the petitioner's occupations and conduct in the time since his disbarment, (4) the time elapsed since the disbarment, and (5) the petitioner's present competence in legal skills.[12]

Having just explained the seriousness of the conduct leading to Mr. Wheaton's disbarment, we need not address the first factor. We turn, then, to the second factor—his character, maturity, and experience at the time of disbarment in 2005. As set forth above, Mr. Wheaton was admitted to the bar in 1995. He worked for a single year for the State Tax Department, and then moved to the Eastern Panhandle in 1996 to open a solo practice. His misconduct began almost immediately upon the opening of that practice, spanning a five-year period from 1997 through 2002. We previously expressed in *Wheaton I* that "there is no dispute that [Mr. Wheaton] was inexperienced in the practice of law" at the time his misconduct began.[13] But we found that his inexperience was tempered by the substantial duration of the misconduct, and the egregious dishonesty involved in the

---

[11] Syl. Pt. 2, *Brown*, 166 W. Va. at 226-27, 273 S.E.2d at 567.

[12] *In re Smith*, 214 W. Va. 83, 85, 585 S.E.2d 602, 604 (1980) (quoting *Brown*, 164 W. Va. at 237-38, 262 S.E.2d at 446).

[13] *Wheaton I*, 216 W. Va. at 682, 610 S.E.2d at 17.

continued violations. We once again find that, while Mr. Wheaton was an inexperienced lawyer when his misconduct began, his inexperience does not justify the serious misconduct he committed, nor does it justify the lengthy duration of the offenses.

Turning to the third factor, we must consider Mr. Wheaton's conduct and occupations since the time of his disbarment. As set forth above, Mr. Wheaton had a rough start in the years immediately following the annulment of his license in 2005. From 2005 to the filing of the first petition for reinstatement in 2010, Mr. Wheaton failed to maintain steady or gainful employment, engaged in a series of behaviors that called into doubt whether he had been rehabilitated, and failed to satisfy any of the enumerated requirements for his reinstatement. Those considerations formed the basis of our denial of his first petition for reinstatement.

But, a decade has passed since *Wheaton II*, and the record reflects a marked improvement in Mr. Wheaton's conduct. Since 2011, Mr. Wheaton has been steadily employed, though in multiple different occupations.[14] While some of those positions were

---

[14] The ODC report indicates that Mr. Wheaton has been a program manager for a company in Roanoke, Virginia; a corporate trainer for BrownGreer, PLC, in Richmond, Virginia; a small business owner; and a document review professional for a company in Richmond, Virginia. Further, at oral argument, Mr. Wheaton stated that he has held several part time jobs, including as a delivery driver for an autoparts company. While we are mindful that Mr. Wheaton has held numerous different positions, we commend his continued efforts to ensure that he was consistently employed such that he could meet his financial obligations.

outside of the legal field, since 2018 he has been employed as a paralegal for the city government of Washington, D.C.

Turning to Mr. Wheaton's conduct outside of employment, we take care to note that Mr. Wheaton spent two years as a caregiver for his mother while she battled leukemia, and he served in a fiduciary capacity as a trustee at his church in Roanoke, Virginia. Further, in contrast to his last appearance before this Court in 2011, Mr. Wheaton is now making timely child support payments and is actively working to deplete any remaining arrearages.

Perhaps most compelling, Mr. Wheaton has made great strides in satisfying the requirements for reinstatement we set in 2004. To reiterate, at the time of his disbarment, we ordered that prior to reinstatement, Mr. Wheaton must: (1) pay full restitution to Ms. Christenson, Mr. Pruden, and Ms. Mason; (2) fully satisfy the bankruptcy judgment in the Mason matter; (3) reimburse the LDB for the costs of the disciplinary proceedings; and (4) take an additional eighteen hours of CLE in ethics and law office management. At this time, Mr. Wheaton has paid full restitution to his former clients, he has entered into payment plans to satisfy the Mason judgment and to reimburse the LDB and made payments on the same, and he has logged 19.30 hours of CLE in ethics and law office management for the 2018-2020 reporting term. However, we are cognizant that in *Wheaton I*, we specifically stated that, before Mr. Wheaton could seek reinstatement, he was to *fully* satisfy the Mason judgment and that he was to have reimbursed the LDB. So,

12

the question remains whether the execution of payment plans is sufficient to satisfy those requirements. In answering this question, we examine several of our prior opinions that addressed the payment of restitution prior to reinstating a previously annulled license to practice law.

First, in *Lawyer Disciplinary Board v. Vieweg*,[15] we reinstated a petitioner's law license while he was in the process of repaying substantial debts. This Court annulled Mr. Vieweg's law license in 1989 after it became clear he had engaged in several instances of misconduct involving the misappropriation of client funds and conversion of other monies.[16] As a result of those misdeeds, Mr. Vieweg owed significant debts to both former clients and banking institutions. He petitioned for reinstatement in 1993, but began repaying those debts prior to filing the petition. Among other things, including his treatment for alcoholism, we considered his having taken the initiative to repay his debts in determining whether to reinstate his license. Further, in granting the petition, we conditioned Mr. Vieweg's reinstatement on the "continuation of payment of past debts."[17]

---

[15] 194 W. Va. 554, 461 S.E.2d 60 (1995).

[16] *Id*. at 556-57, 461 S.E.2d at 62-63. In fact, Mr. Vieweg initially surrendered his license in 1988, but this Court converted his voluntary resignation to an annulment after he pled guilty to the felony offense of knowingly submitting a false financial statement to a bank concerning a loan in the United States District Court for the Northern District of West Virginia.

[17] *Id*. at 561, 461 S.E.2d at 67.

13

We recently addressed *Vieweg* in *In re Reinstatment of Swisher*.[18] This Court suspended Mr. Swisher's license to practice law in 1998 following two violations of the Rules of Professional Conduct. We conditioned his reinstatement on his demonstration that "he has satisfied in total the judgment [entered against him by a United States District Court]" and that he pay "all costs incurred in the investigation and hearing of [the disciplinary] matter."[19] Mr. Swisher was also licensed to practice law in Pennsylvania, where he was disbarred four years later.[20] As a result of his disbarment, Mr. Swisher owed restitution to the Pennsylvania Office of Disciplinary Counsel and to the Pennsylvania Lawyers Fund for Client Security for payments to clients affected by his misconduct, but he failed to pay either.[21] Upon petitioning this Court for reinstatement, Mr. Swisher contended that he would enter into a payment plan to satisfy the outstanding debts in Pennsylvania "if made a condition of his reinstatement."[22] He cited *Vieweg* to support his position that his willingness to pay restitution in the future warranted reinstatement, but we distinguished that case from Mr. Swisher's by noting that "Mr. Vieweg had already begun paying his past debts when he sought reinstatement by this Court. The same cannot be said

---

[18] 243 W. Va. 483, 845 S.E.2d 258 (2020).

[19] *Id*. at 484, 845 S.E.2d at 259.

[20] *Id*. at 485, 845 S.E.2d at 260.

[21] *Id*. at 487, 845 S.E.2d at 262.

[22] *Id*. at 490, 845 S.E.2d at 265.

14

for Mr. Swisher. He only offers to satisfy his debts if he is reinstated."[23] We then concluded that "[p]erhaps the most convincing step Mr. Swisher could have taken to demonstrate that his reinstatement is warranted would have been to have made a good faith effort to begin making restitution[.]"[24]

Similarly, in *In re Reinstatement of Drake*,[25] we declined to reinstate the license of a petitioner who had made no effort to pay the restitution he owed to former clients. Mr. Drake had entered into an *Alford/Kennedy* plea to the crime of embezzlement after he converted funds from a trust, and was ordered to make restitution to the subrogee of that trust in the amount of approximately $57,000.00.[26] When Mr. Drake later petitioned for reinstatement, he had made no restitution payments, nor had he even attempted to ascertain where to send those payments, until just a few weeks before the oral argument on his petition for reinstatement.[27] We declined to reinstate his license, and based that

---

[23] *Id.*

[24] *Swisher*, 243 W. Va. at 491, 845 S.E.2d at 266.

[25] 242 W. Va. 65, 829 S.E.2d 267 (2019).

[26] *Id.* at 67, 829 S.E.2d at 269.

[27] *Id.* at 71, 829 S.E.2d at 273. Mr. Drake argued to this Court that he had not made restitution payments yet because, by the terms of his agreement with the trust subrogee, his obligation to pay was only triggered upon the entry of an order of dismissal from bankruptcy court. As the bankruptcy court had not entered that order, the obligation had not been triggered. We were not convinced by this argument, as Mr. Drake made little effort to ensure the entry of that order and admitted that he was not focused on the issue until just before argument in his reinstatement matter.

decision in part upon our finding that he "did not prioritize restitution and did not exercise reasonable and diligent efforts to fulfill these obligations until he came before this Court seeking reinstatement of his law license."[28]

Mr. Wheaton's case falls in the middle of those outlined above. First, we reiterate that as of February 2021, he has entered into payment plans to satisfy the $45,000.00 Mason judgment and to reimburse the LDB the $13,353.39 in costs he owed from the underlying disciplinary proceedings. And, he has begun making payments on both of those plans and expressed his intention to increase the amounts of those payments in the future. So, Mr. Wheaton's case is somewhat similar to that of Mr. Vieweg in that he is currently making payments on his outstanding financial obligations. Second, Mr. Wheaton's case is not quite like Mr. Swisher's, as Mr. Wheaton does not attempt to argue that he will only repay his debts if he is essentially forced to do so. But, as we noted in *Swisher*, making a good faith effort to begin paying restitution may be useful in establishing that reinstatement is warranted. In that vein, this case shares some characteristics of Mr. Drake's petition for reinstatement. Specifically, we are cognizant that Mr. Wheaton has only begun paying his debts relatively late in the process, so we could justifiably infer that, like Mr. Drake, Mr. Wheaton did not "prioritize restitution."

---

[28] *Id.*

16

Nonetheless, we are persuaded that Mr. Wheaton's efforts in making restitution are satisfactory. The HPS and the ODC made clear that Mr. Wheaton readily expressed his willingness to enter into payment plans on these substantial debts. That willingness, coupled with his actually having executed payment plans for the Mason judgment and for the costs owed to the LDB, as well as his having already begun making payments on those plans, leads us to find that Mr. Wheaton has made a good faith effort to begin repaying the obligations we set out in *Wheaton I*. Therefore, the fact that Mr. Wheaton has not "fully satisfied" all outstanding financial obligations does not preclude his reinstatement under these facts. That said, any reinstatement will necessarily be conditioned on the continued repayment of those debts.

Returning to the *Smith* factors, we must next consider how much time has elapsed between the time of disbarment and the current petition for reinstatement. Mr. Wheaton was disbarred on January 20, 2005, and he filed the current petition for reinstatement on September 26, 2018. Thirteen years have passed between the time of disbarment and the filing of the second petition for reinstatement, and the passage of time has certainly proven helpful in Mr. Wheaton's case. In the first years after his disbarment, his prospects for reinstatement were bleak, as clearly shown by our denial of his first petition for reinstatement. But in the decade since that denial, Mr. Wheaton has made marked improvements in his employment, his conduct, and his understanding of the duties and responsibilities that come with being a member of the bar.

The last factor for our consideration of Mr. Wheaton's rehabilitation is whether he has present competence in legal skills. As stated throughout this opinion, Mr. Wheaton has held several jobs since his disbarment, and many of those have been in the legal field, including his current position as a paralegal. He indicates to the Court that some of his duties in his current position are comparable to those performed by an attorney. Specifically, he drafts legal memoranda, briefs, and court documents, and he engages in regular consultation with attorneys and other legal professionals. In addition, Mr. Wheaton logged 34.80 hours of CLE in the 2018-2020 term, 19.30 of which were in ethics and law office management, so he has attempted to maintain competence in current legal development. We conclude that this is sufficient to demonstrate that Mr. Wheaton has maintained competence in legal skills such that he could resume the practice of law.

For all of these reasons, we conclude that Mr. Wheaton has demonstrated to this Court a record of rehabilitation that indicates there is little likelihood he will engage in future unprofessional conduct. With that in mind, we turn to the final question: whether Mr. Wheaton's reinstatement will have a "justifiable and substantial adverse effect on the public confidence in the administration of justice." We find that it would not. The ODC does not argue that such adverse effects would result, nor do we have evidence before us indicating that Mr. Wheaton's return to practice would pose such a threat to the public confidence in the administration of justice. Mr. Wheaton has demonstrated his rehabilitation to this Court, and he has satisfied—or is in the process of satisfying—the requirements we set forth for his reinstatement in 2004. Unlike the last time Mr. Wheaton

18

petitioned this Court for reinstatement, he has clearly improved his circumstances, taken responsibility for his misconduct, and been humbled by these experiences. Therefore, we find that the public perception of the administration of justice would be unharmed by reinstating Mr. Wheaton's license to practice law.

## IV. CONCLUSION

We reinstate Keith L. Wheaton's license to practice law in West Virginia, effective immediately, on the following conditions: (1) supervision for a period of three years by a supervising attorney who will file monthly reports with the ODC; (2) annual auditing of all accounts associated with his practice, if in private practice, by a certified public accountant for a period of three years; (3) continued payment of the outstanding balances on the Mason judgment and the costs already owed to the LDB, prioritizing the Mason judgment in compliance with the now-executed payment plans; (4) payment of all dues to the West Virginia State Bar; and (5) reimbursement to the LDB of the costs of the reinstatement proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure. The Clerk is directed to issue the mandate contemporaneously herewith.

Petition granted.