FILED
**June 14, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

18-0836, *In re Petition for Reinstatement of Keith Wheaton*

Armstead, Justice, dissenting,

In 2004, this Court annulled Petitioner Keith Wheaton's law license based on its finding that he committed 31 separate violations of our Rules of Professional Conduct. *See Lawyer Disciplinary Board v. Wheaton*, 216 W. Va. 673, 610 S.E.2d 8 (2004) ("*Wheaton I*"). These 31 separate violations arose out of six complaints that had been filed against Mr. Wheaton by former clients. Mr. Wheaton's misconduct included misappropriation and conversion of client funds, making material misrepresentations to clients, a bankruptcy trustee, bankruptcy court, and counsel for the ODC, failing to communicate with clients, and failing to diligently pursue claims on behalf of clients.

In *Wheaton I*, this Court set forth a number of mandatory requirements that Mr. Wheaton had to comply with prior to seeking reinstatement. Because Mr. Wheaton's misconduct resulted in substantial financial harm, the Court *required* that he pay approximately $60,000 to former clients, the Lawyer Disciplinary Board, and to satisfy a bankruptcy judgment.[1] When Mr. Wheaton applied for reinstatement to this Court in 2018, he had not paid any of the *required* $60,000. Because Mr. Wheaton has not complied with the mandatory reinstatement requirements set forth in *Wheaton I*, and because his

---

[1] Mr. Wheaton was *required* to 1) reimburse small sums to three clients (a total of $1,250), 2) "*fully satisfy* the judgment assessed against him [$45,000] by the federal bankruptcy court due to misconduct in the underlying case of his client, Ms. Mason;" and 3) reimburse the Lawyer Disciplinary Board for the costs [$13,353.39] associated with the lawyer disciplinary proceedings. *Wheaton I*, 216 W. Va. at 680 n. 30, 610 S.E.2d at 15 n. 30 (emphasis added).

1

reinstatement could have a justifiable and substantial adverse effect on the public confidence in the administration of justice, I dissent from the majority opinion's ruling in this matter.

This Court has long held that:

> "The general rule for reinstatement is that a disbarred attorney in order to regain admission to the practice of law bears the burden of showing that he presently possesses the integrity, moral character and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment he must demonstrate a record of rehabilitation. In addition, the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration of justice and in this regard the seriousness of the conduct leading to disbarment is an important consideration." Syllabus Point 1, *In Re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980).

> "Rehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct." Syllabus Point 2, *In Re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980).

Syl. Pts. 3 and 4, *Lawyer Disciplinary Bd. v. Vieweg*, 194 W. Va. 554, 461 S.E.2d 60 (1995).

Furthermore, if a disbarred attorney seeks readmission, this Court must consider the lawyer's prior misconduct. *See, e.g., In re Smith*, 214 W. Va. 83, 85, 585 S.E.2d 602, 604 (1980) (noting necessity of looking to "the nature of the original offense for which the petitioner was disbarred") (internal citation omitted); Syl. Pt. 1, in part, *In re*

2

*Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980) (stating "the seriousness of the conduct leading to disbarment is an important consideration").

We have implemented a five-factor test in evaluating rehabilitation, stating that it is necessary to consider: 1) the nature of the original offense for which the petitioner was disbarred; 2) the petitioner's character, maturity, and experience at the time of disbarment; 3) the petitioner's occupations and conduct in the time since his disbarment; 4) the time elapsed since the disbarment; and 5) the petitioner's present competence in legal skills. *In re Smith*, 214 W. Va. at 85, 585 S.E.2d at 604. Based on these factors, I disagree with the majority's conclusion that Mr. Wheaton's petition for reinstatement should be granted.

The first factor is the nature of the original offense. Mr. Wheaton consistently took money from clients and did not perform legal services for them, did not return their calls, did not file lawsuits on their behalf, and was dishonest when his clients asked about the status of their cases (two clients went to the courthouse and discovered that no case had been filed after Mr. Wheaton told them otherwise). Further, Mr. Wheaton took client money and used it for his own purposes.

Moreover, the original ODC case against Mr. Wheaton involved six clients. The ODC had fourteen additional complaints against him at the time he was disbarred. It closed these additional cases due to his disbarment. Neither the Hearing Panel Subcommittee ("HPS"), nor the majority opinion, address these fourteen additional complaints that were not pursued because of the disbarment. It is unclear whether the ODC

3

may now reopen and investigate these matters, and whether these fourteen additional clients may seek reimbursement for the financial harm they allege Mr. Wheaton caused.

In addition to these fourteen complaints, there were two client complaints that were filed against Mr. Wheaton after he was disbarred. As with the fourteen additional complaints, these two post-disbarment complaints were closed "but placed in Petitioner's reinstatement [file] for future consideration" according to the ODC. In one of these post-disbarment complaints, a client alleged that he paid Mr. Wheaton $18,500 and had not received adequate representation. Again, it is unclear whether the ODC will now reopen this complaint, and whether the client may seek reimbursement of this alleged sum.

In sum, Mr. Wheaton's conduct in the six complaints surrounding his initial disbarment was extremely egregious. This conduct included misappropriating and conversion of client funds. "This Court, like most Courts, proceeds from the general rule, that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 499, 513 S.E.2d 722, 726 (1998). Further, it is very concerning that sixteen additional complaints were filed against Mr. Wheaton and not pursued because he was disbarred.

As to the second factor, Mr. Wheaton was admitted to the Bar in 1995 and the client complaints mostly occurred in the late 1990s. Therefore, this factor would weigh in Mr. Wheaton's favor—he was young and relatively inexperienced at that time.

4

The third factor requires an examination of Mr. Wheaton's occupations and conduct since disbarment. As set forth in this Court's 2011 memo decision denying his first petition for reinstatement, Mr. Wheaton's conduct between 2004 and 2011 was troubling. *See Wheaton v. Lawyer Disciplinary Board*, No. 35462, 2011 WL 8186639 (November 17, 2011) (memorandum decision). He owed substantial unpaid child support, he pled guilty to a misdemeanor crime in North Carolina, and he had a judgment entered against him by a West Virginia family court for $15,060.46 for three worthless checks submitted to the West Virginia Bureau for Child Support Enforcement. It appears that Mr. Wheaton's conduct has improved since 2011. He is currently employed as a paralegal in Washington, D.C. According to the ODC, he has been making child support payments, "as best as he can." The ODC also noted that Mr. Wheaton has repaid three former clients and "continues to desire to repay all monies owed to former clients and to the Bar if allowed to be reinstated."

As to the fourth and fifth factors, approximately seventeen years have passed since Mr. Wheaton's disbarment. He has taken CLE courses and is currently a paralegal, which would both be considerations under the fifth factor.

When weighing all of these factors, I disagree with the majority's decision to grant the petition for reinstatement. Mr. Wheaton's actions caused severe harm to a number of clients. Looking at this harm financially, he owed three clients small sums of money, $450, $300, and $500. He repaid those sums, $1,250 in total. However, he still owes approximately $58,000 in unpaid claims that arose from the conduct that led to his

5

disbarment. While he has entered into payment plans to begin repaying this large amount, this Court in *Wheaton I required* him to "*fully satisfy* the judgment assessed against him [$45,000] by the federal bankruptcy court due to misconduct in the underlying case of his client, Ms. Mason; . . . [and] reimburse the [LDB] for the costs [which total $13,353.39] associated with the lawyer disciplinary proceedings, pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure." 216 W. Va. at 680 n. 30, 610 S.E.2d at 15 n. 30 (emphasis added).

Despite this large outstanding debt, the majority opinion concludes that "Mr. Wheaton has made great strides in satisfying the requirements for reinstatement we set in 2005." I strongly disagree with this conclusion. Mr. Wheaton's misconduct resulted in substantial financial harm, and this Court justifiably *required* that he satisfy the various resulting debts prior to seeking reinstatement. He has not done so. In fact, while Mr. Wheaton has now entered into one or more repayment agreements to pay the remaining amounts he owes, the fact remains that in the many years since he was directed to make such payments, he has made little, if any, effort to fulfill such obligations. Significantly, he had made no payments toward the largest of these debts, including the $45,000 assessed by the federal bankruptcy court.

Further, the majority opinion attempts to distinguish this case from a recent ruling by this Court in which we denied a reinstatement petition, *In re Reinstatement of Drake*, 242 W. Va. 65, 829 S.E.2d 267 (2019). As described by the majority, "we declined to reinstate the license of [Mr. Drake] who had made no effort to pay the restitution he

6

owed to former clients. Mr. Drake had entered into an *Alford/Kennedy* plea to the crime of embezzlement after he converted funds from a trust, and was ordered to make restitution to the subrogee of that trust in the amount of approximately $57,000.00." Mr. Drake argued that he had not made restitution payments yet because his obligation to pay was only triggered upon the entry of an order of dismissal from bankruptcy court. Because the bankruptcy court had not entered that order, Mr. Drake asserted that the obligation had not been triggered. This Court rejected his argument and determined that "[i]t is evident . . . that Mr. Drake *did not prioritize restitution and did not exercise reasonable and diligent efforts to fulfill these obligations* until he came before this Court seeking reinstatement of his law license." *Id*. at 71, 829 S.E.2d at 273 (emphasis added).

Had this Court followed our ruling in *Drake* in the present matter, it is clear that Mr. Wheaton's petition for reinstatement should have been denied. Mr. Drake owed approximately $57,000 when he came before this Court seeking reinstatement. Mr. Wheaton owed approximately $58,000 of the original $60,000 that he was required to repay when he appeared before this Court seeking reinstatement. Mr. Drake was disbarred in 2012. Mr. Wheaton was disbarred in 2004. Because Mr. Drake had not made diligent efforts to repay the $57,000 in the seven years between his disbarment and his appearance before this Court, we denied his petition. Yet, Mr. Wheaton has paid only a small fraction of his debt in the seventeen years between his disbarment and his appearance before this Court. Therefore, applying the reasoning employed in the Court's ruling in *Drake* to the

7

present matter can only result in one conclusion—Mr. Wheaton's reinstatement petition should be denied.

The harm that may result from the majority's ruling is twofold. First, under syllabus point three of *Vieweg*, we must consider whether Mr. Wheaton's reinstatement will have a "justifiable and substantial adverse effect on the public confidence in the administration of justice." The number of clients that have filed complaints against Mr. Wheaton was immense—at least twenty-two. Should Mr. Wheaton engage in misconduct upon being reinstated, these twenty-two clients, and the general public, may justifiably ask why this Court would allow Mr. Wheaton to practice law again despite causing substantial harm in the past, and despite his failure to follow through with the requirements for reinstatement this Court set forth in *Wheaton I*.

Second, an attorney who is currently disbarred and is required to repay a large sum of money prior to seeking reinstatement may assume that such requirement is not mandatory. Instead, relying on the majority opinion in this case, such an attorney may assume that they can be reinstated by only repaying a minimal fraction of such debt and waiting several years to reapply. This sends an unfortunate message both to members of the State Bar, as well as to the general public.

Matters such as these are often difficult for this Court. We truly want to see attorneys rehabilitated and restored to the practice of law when it is appropriate. It is undeniable that Mr. Wheaton has made significant progress in his efforts toward rehabilitation and it is clear to see that the attorney that seeks reinstatement today is

essentially a different person than the one who previously sought reinstatement so many years ago. I wholeheartedly commend him on this progress. However, due to the seriousness and sheer number of his prior offenses, his lack of effort over the past several years to fulfill the restitution that he was ordered to pay in *Wheaton I* to gain reinstatement, and the need for this Court to be consistent in our treatment of applicants who are similarly situated, I am unable to agree that his reinstatement is warranted at this time. Therefore, while I strongly disagree with the majority's ruling, I wish Mr. Wheaton success upon his reinstatement and urge him to make all reasonable and diligent efforts to continue to repay the outstanding debt that this Court ordered him to repay in *Wheaton I*.